**W. P. CURLIN, Commissioner of Highways et al., Appellants,**

v.

**Lawrence W. WETHERBY, Governor of Kentucky et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 24, 1955.

J. D. Buckman, Jr., Atty. Gen., Jo M. Ferguson, Asst. Atty. Gen., for W. P. Curlin, Com'r of Highways, et al.

Cornelius W. Grafton, Louisville, for Cornelius W. Grafton and Kentucky Good Roads Federation.

Louis Cox & R. Vincent Goodlett, Hazelrigg & Cox, Frankfort, for Lawrence W. Wetherby.

Hubert Meredith, Greenville, for Hubert Meredith and other citizens and taxpayers.

Joseph J. Leary, Frankfort, amicus curiæ.

CULLEN, Commissioner.

In issue on this appeal is the constitutionality of an Act of the 1954 General Assembly providing a method for financing the construction and improvement of state highways. Chapter 39 of the Acts of 1954; KRS 175.005 to 175.320.

The action below was commenced by the Commissioner of Highways against the Governor, seeking to compel the latter to perform certain duties imposed upon him by the Act, which he, questioning the constitutionality of the Act, had declined to do. The Kentucky Good Roads Federation intervened as a plaintiff, asserting the validity of the Act, and Hubert Meredith, as an individual taxpayer and as a representative of other taxpayers, intervened as a defendant, maintaining that the Act is unconstitutional.

The lower court held the Act void, and the Commissioner of Highways and the Kentucky Good Roads Federation have appealed.

One of the grounds upon which the Act was held invalid is that it would result in the creation of an unconstitutional indebtedness, in violation of Sections 49 and 50 of the Kentucky Constitution. Since we concur in this view, we will confine our discussion to the one ground.

The general plan or scheme of the Act is as follows: A new state agency, known as "The Kentucky Highway Authority," would be established; selected state highways would be transferred to the Authority by the Department of Highways; the Authority would issue bonds to secure funds with which to improve the transferred highways; and the Department of Highways would then lease the highways back from the Authority, at a sufficient rental to retire the bonds over a period of years, not to exceed 40. The lease agreement would contain a pledge, *for the full term of the lease,* of the "current resources" of the Department of Highways for each bien-

nium. "Current resources" is defined in the Act as meaning all of the money biennially accruing to the State Road Fund except the two-sevenths of the gasoline tax earmarked for rural highways and certain other minor exceptions.

As presented, the question is not whether the *bonds* to be issued by the Authority will create an unconstitutional indebtedness, but whether the *lease* will create such an indebtedness. On this question we think the provisions of Section 14 of the Act are decisive. We quote Section 14:

"Rentals payable by the department to the Authority, pursuant to the terms of any lease, or of any agreement to lease, shall be deemed to constitute compensation to the Authority for the agreed reasonable value of the services and facilities provided under the terms of the applicable instrument, during each successive legislative biennium, *and shall be binding and enforceable upon said department in each such biennium only to the extent of the current resources of said department. Such current resources shall be budgeted by the department for each fiscal year so as to provide payment of all rentals falling due therein. If for any reason current resources of the department for any biennium should prove to be insufficient for the payment of all rentals due, or if, for any reason, such rentals are not paid therefrom, any such unpaid rentals shall be carried over and paid from current resources of the department in future bienniums, to the extent such current resources are then available. The department shall make payment of the rentals prescribed in any and all of such leases, to the full extent of its current resources in each biennium. The department may pledge as security for the payment of its rentals for the terms of such leases, such revenues as it may receive which are limited in application to highway purposes by section 230 of the Constitution.* Any failure, neglect or refusal of the department to pay any rental from its current resources during any bien-

nium shall not cause or permit the precipitation of rentals due in any future biennium or give rise to a cause of action for such rentals due in any such future biennium. Subject to the conditions and restrictions set forth in the resolution, proceedings, trust indenture or other instruments adopted or executed in connection with the issuance of any bonds issued under authority of this Act, any failure, neglect or refusal of the department to pay rentals for any then current biennium from its current resources, shall give rise to a cause of action on the part of the holders of such bonds, or any receiver or trustee acting on their behalf, directed to the proper officers of the department requiring them, or any of them, to perform their lawful duties as herein prescribed, and as prescribed by the resolution, proceedings, trust indenture, lease or other instrument pursuant to which the bonds were issued, and to refrain from doing otherwise." (Our emphasis.) KRS 175.130.

■ It will be observed from the foregoing section that the Act does not contemplate a lease for one year or one biennium only, with options to renew, as has been the situation in the so-called "holding company" cases that have been approved by this Court, beginning with Waller v. Georgetown Board of Education, 209 Ky. 726, 273 S.W. 498. On the contrary, the lease will be for a period of years (permissibly as many as 40), with an absolute obligation on the part of the Department of Highways to pay the rental out of such resources as may become available to the department. It is this feature of the Act which we think renders it unconstitutional.

Controlling are the cases of Crick v. Rash, 190 Ky. 820, 229 S.W. 63; Billeter & Wiley v. State Highway Commission, 203 Ky. 15, 261 S.W. 855; and State Highway Commission v. King, 259 Ky. 414, 82 S.W. 2d 443. In the Crick case it was held that an agreement by the State Highway Commission to refund, out of future appropriations to the statutory state road fund, moneys advanced by a county, would create an unconstitutional indebtedness. In the Billeter & Wiley case, it was held that the State Highway Commission could not enter into construction contracts payable out of the appropriations of a future biennium. In the King case, an Act authorizing the State Highway Commission to pledge future appropriations for the payment of toll bridge bonds was held unconstitutional.

The appellants undertake to distinguish the foregoing cases, but no valid basis for distinction has been advanced.

It is argued that no debt is created because the state is not obligated to continue making appropriations to the Department of Highways, and may escape any obligation of the department under the lease by simply discontinuing the levying of taxes and appropriating of funds for the department. This argument is without merit, because as a practical matter the state could not discontinue the *major function of government* consisting of highway construction and maintenance. Herein lies the distinction between the one-year renewal option leases, and a long-term lease. In the case of the one-year lease, with option to renew, the governmental unit or agency may abandon the lease, and use all of its *funds* for some other purpose. For example, if a school district renting a school building under such a lease desired to abandon the lease, it could do so at the end of any year, and use its funds to acquire a different school building. But under the kind of lease involved in the case before us, the state could not simply abandon the leased highways and use its funds to build different highways; the state would be compelled to abandon completely its highway functions in order to escape liability under the lease.

■ We think it is an inescapable conclusion that if a state agency performing a major function of government obligates the funds to be appropriated to it in future years, a debt of the *state* is created, because

the state cannot abandon or discontinue the function and still continue to operate as a government.

The Attorney General, as counsel for the Commissioner of Highways, practically concedes that the lease contemplated by the Act would create a debt. However, he contends that under Section 230 of the Constitution of Kentucky a debt may be created against the State Road Fund, and that such a debt would not violate Sections 49 and 50 of the Constitution. This argument is predicated upon the so-called "special fund theory".

The substance of the argument is that the people of Kentucky, by providing in Section 230 of the Constitution that the revenues from gasoline and motor vehicle taxes may be expended only for road purposes, have indicated their desire that these revenues be committed to road purposes, and therefore the creation of a debt against the Road Fund does not violate the spirit and intent of Sections 49 and 50 of the Constitution, which were to prohibit the encumbering of revenues available for "general state purposes". A similar argument has been upheld in some other states, including Colorado and Michigan. See Johnson v. McDonald, 97 Colo. 324, 49 P.2d 1017; Ziegler v. Witherspoon, 331 Mich. 337, 49 N.W.2d 318.

In Kentucky, a sort of special fund theory has been sustained in cases involving street improvement bonds and in cases involving municipal utilities. However, as pointed out by Judge Thomas in Crick v. Rash, 190 Ky. 820, 229 S.W. 63, the special funds in those types of cases are not *public* funds, but are collected from private persons in the way of compensation for individual benefits received or as fees for use of the services of a facility.

It is argued here that the gasoline tax and other motor vehicle taxes are in reality fees or charges for the use of the highways, and the revenues from those taxes are therefore not tax revenues or public funds available for general governmental purposes. While this argument has some plausibility, it overlooks the fact that these revenues are not collected for the use of a particular facility, but for use of the roads generally. Conceivably, all of major roads of the state could be converted into toll roads, financed through fees paid by motorists for their use, and yet the state would continue to have the power to levy and collect gasoline and motor vehicle taxes, and use the proceeds for secondary roads and for incidental highway purposes. Thus these revenues would remain available even if the major highways were financed through other sources. We think the gasoline tax and other motor vehicle taxes, being collected from the public generally, must be considered to be sources of public revenue, and as such subject to general constitutional prohibitions against creating obligations against future revenues.

As we view the matter, the fact that Section 230 of the Constitution restricts to road purposes the expenditure of the revenues from the gasoline tax and other motor vehicle taxes does not furnish a basis for upholding the creation of a debt against the Road Fund, but to the contrary constitutes a reason, additional to those already expressed, for holding such a debt to be unconstitutional. As pointed out earlier in this opinion, a pledge by a major state agency of future appropriations to it has the effect of creating an obligation of the state, because the state cannot abandon the function of government which the agency is performing. However, it might be argued that in some instances the state *could* abandon the function, and use its revenues for other purposes. But by reason of Section 230 of the Constitution, if the State should abandon the highway function, it would be required also to abandon the revenues earmarked by the Constitution for highway purposes.

We are of the opinion that to extend the special fund theory to include funds derived from taxes would result in sanctioning an evasion of the spirit and purpose of the constitutional prohibition against debt. In the final analysis, the practical result of a state debt is that future

government officials are prevented from expending, for what *they* consider the best purposes, the revenues received during their administration. The fact that the people have expressed, through the Constitution, their desire that certain revenues be expended only for a specified purpose, does not mean that the people intended their periodically elected representatives to have any authority other than to expend current revenues for that purpose.

 It is apparent that the Act in question would not have been passed without the lease provision which is held unconstitutional, and therefore the entire Act will be deemed unconstitutional.

The judgment is affirmed.

WATT M. PRICHARD and COLEMAN WRIGHT, Special Judges, sitting for HOGG and MONTGOMERY, JJ.