**H. F. SKIDMORE, Individually as a Citizen, Resident & Taxpayer of the City of Elizabethtown, etc., Appellant,**

v.

**CITY OF ELIZABETHTOWN, a Municipal Corporation of the Fourth Class, Appellee.**

Court of Appeals of Kentucky.

May 25, 1956.

L. A. Faurest, Jr., Elizabethtown, for appellant.

Robert N. Hubbard, City Atty., Elizabethtown, Joseph R. Rubin, Louisville, for appellee.

CULLEN, Commissioner.

In a declaratory judgment action brought by a citizen and taxpayer, suing in a representative capacity, against the City of Elizabethtown, the court upheld the validity of an ordinance of the city providing for the issuance of revenue bonds to finance the acquisition and construction of additional on-street and off-street parking facilities, the bonds to be secured by a pledge of the revenues from existing and subsequently acquired on-street parking meters and off-street parking lots. The plaintiff has appealed.

The ordinance purports to combine the on-street and off-street parking facilities into a single "public project" KRS Ch. 58, and it provides for the issuance of $115,000 in bonds to pay the cost of additions to the facilities. The bonds are to be payable solely from the revenues of the project. The city covenants to maintain existing meters and charges, subject to the right to make changes in location of on-street parking meters where made necessary by street relocations or readjustment of traffic regulations and controls. Provision is made for a receiver in the event of default, who would have authority to fix parking charges and collect them for payment of the bonds.

There is specific statutory authority for the action which the city is proposing to take. KRS 82.050. Therefore, the questions presented relate only to constitutionality.

The primary question is whether the proposed bond issue would create a debt of the city in violation of Section 157 of the Constitution of Kentucky. The pertinent provision of that section is that no city "shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters." Of course, the bond ordinance specifically states that the bonds shall not constitute a debt of the city, but this recitation would not control if in reality the effect of the bonds was to create a debt within the meaning of the Constitution.

In those instances in the past where revenue bonds issued by a governmental unit have been upheld by this Court, the revenue pledged to the payment of the bonds has always been something other than *tax* revenue. It has consisted of the revenue from such types of things as recreational facil-

ities, McKinney v. City of Owensboro, 305 Ky. 254, 203 S.W.2d 24; utilities, Williams v. City of Barbourville, Ky., 246 S.W.2d 591; or toll roads, Guthrie v. Curlin, Ky., 263 S.W.2d 240. Usually, the revenue is paid by persons who receive some individual benefit or service, as distinguished from the general benefits or service all citizens receive from organized government. Even in the school building revenue bond cases, the revenue pledged is *rental payments*. It is true that the rental payments come from *tax* money, but the tax money as such is not pledged—only the rentals actually received.

The objection to a pledge of future tax revenues for the payment of an obligation rests in the fact that present government, by making the pledge, appropriates revenue sources which otherwise could have been depended upon with certainty by future government for general governmental purposes. See Curlin v. Wetherby, Ky., 275 S.W.2d 934. The same objection does not exist as concerns revenues derived from payments by individuals for individual services or benefits, or as concerns revenues derived under the police power, because such revenues cannot be exacted from the citizens generally for general governmental purposes and thus do not fall in the category of basic, certain, sources of governmental revenue.

We think Section 157 of the Constitution is concerned only with the protection of such future revenues as can be exacted in the form of taxes.

No serious question is, or can be, raised concerning the pledge of the revenue from the off-street parking lots of Elizabethtown. All of our revenue bond cases support such a pledge. The real problem exists with respect to the pledge of the proceeds from the on-street parking meters.

In City of Louisville v. Louisville Automobile Club, 290 Ky. 241, 160 S.W.2d 663, it was held that the City of Louisville had the right to install and operate parking meters under the *police power*. It would seem to follow, then, that the revenue from parking meters is not *tax* revenue, and therefore there can be no objection to a pledge of the future revenues from the meters. It is argued, however, that since parking meters can be justified only under the police power, it is improper to utilize them as a source of revenue, and a pledge of the revenues therefore is unconstitutional. This argument overlooks the fact that the basic police problem which parking meters are designed to meet is that of traffic congestion and traffic regulation. It is a basic principle that fees or charges imposed under the police power must be reasonably related to the cost of meeting the particular police problem. Here, we think it is clear that the matter of parking, both on-street and off-street, is all part of the main traffic regulation problem, and therefore there is nothing improper in utilizing excess revenues from the parking meters to meet the costs of the overall traffic regulation police problem, or in fixing the parking meter fees at an amount that will produce such excess revenue.

If it be argued that parking meters do not fall strictly in the police power category, and may be utilized as a source of revenue generally, then it must be considered that the fee for parking is in the nature of a service fee, the pledging of which does not come within the prohibition against the pledging of tax revenues.

It is our opinion that the pledging of the parking meter revenues for the combined parking facility project does not create a debt of the city within the meaning of Section 157 of the Constitution.

It is contended that the city has covenanted to maintain and operate the parking facilities for the 15-year period of the bonds, and because the cost of such maintenance and operation over the total period will exceed the income and revenue of the city for the current year (1955), a debt in violation of Section 157 of the Constitution has been created. As we construe the ordinance, it does not require the city to pay the cost of maintenance and operation out of its general funds, but only requires that the city charge fees for use of the parking facilities sufficient to amortize

the bonds and to pay the costs of maintenance and operation. Therefore, no debt of the city has been created.

A further contention is that, because the city has covenanted to continuously operate the parking facilities for the period of the bonds, and to charge and collect sufficient fees to retire the bonds, and because provision is made for appointment of a receiver to operate the facilities in the event of a default, the city has unconstitutionally surrendered or bargained away its police power. We think a sufficient answer is that the ordinance reserves to the city the power to make appropriate changes in the location of parking meters made necessary by street widening or closing, or by the requirements of traffic regulation and control. Similar contentions, with respect to substantially identical ordinances, were made and rejected in Poole v. City of Kankakee, 406 Ill. 521, 94 N.E.2d 416; State ex rel. Bibb v. Chambers, 138 W.Va. 701, 77 S.E.2d 297; and Comereski v. City of Elmira, 283 App. Div. 556, 128 N.Y.S.2d 913. We concur in the views expressed in those opinions, on the question of surrender of police power.

The judgment is affirmed.