AUTOMOBILE CLUB OF MISSOURI, a Corporation, and George C. Mackey, and Mr. and Mrs. Oscar Cotta, Respondents,

v.

CITY OF ST. LOUIS, John J. Dwyer, Treasurer of the City of St. Louis, and John H. Poelker, Comptroller of The City of St. Louis, Appellants.

No. 47603.

Supreme Court of Missouri,

Division No. 2.

April 11, 1960.

Thomas J. Neenan, City Counselor, John
J. Shanahan, Associate City Counselor,

Eugene P. Freeman, Associate City Counselor, St. Louis, Mo., for appellants.

Green, Hennings, Henry & Evans, Robert D. Evans, John R. Green, II, Lewis C. Green, St. Louis, Mo., for respondents.

ELMO B. HUNTER, Special Judge.

This is an action for declaratory judgment and injunction involving the interpretation and validity of certain ordinances of the City of St. Louis relating to the installation of parking meters and the collection and disposition of fees and fines thereunder.

Plaintiffs-respondents are the Automobile Club of Missouri, a corporation, George C. Mackay and Mr. and Mrs. Oscar Cotta, individuals, all residents and taxpayers of the City of St. Louis, and all of whom are conceded to be proper parties. Defendants-appellants are the City of St. Louis, John J. Dwyer, Treasurer, and John H. Poelker, Comptroller of the city.

Plaintiffs filed their petition for declaratory judgment and injunction on July 19, 1958, for the purpose of determining the validity of Ordinances 45307, 45771, 48437, 48438, 48484, 48897, 48898 and 49071 of the City of St. Louis.

■ Of these eight ordinances the first four mentioned either had been repealed or had expired prior to the time the petition was filed. The question of their validity is moot, and we do not undertake to pass on it.

Ordinance 48484, with amendments to be noted shortly, is the current Parking Meter Ordinance of St. Louis. It provides for a Parking Meter Commission, establishes its powers and duties; provides for the installation of parking meters and zones; for parking meter fees and for the enforcement of the ordinance and fines for violation thereof. Ordinances 48897 and 48898 amend Sections Six and Twelve of the Parking Meter Ordinance, relating re-spectively to meter fees and fines. Ordinance 49071 amends Section Ten of the Parking Meter Ordinance by authorizing the transfer in fiscal year 1958–59 from parking meter funds to general revenue a sum not to exceed $350,000 of which sum $200,000 had been transferred prior to the filing of this suit.

The trial court declared Section Six of Ordinance 48484 invalid as vesting in the commission arbitrary power to set parking fees at less than the designated maximum without requisite standards; Section Ten invalid for making fines for violation of the Parking Meter Ordinance a part of the parking meter fund, declaring "such fines belong to the general revenue of the City"; Section Ten also invalid for the reason it conflicts with Section 304.120, RSMo 1949, V.A.M.S.; Ordinance 48897, passed June 19, 1958, invalid in that it attempts to vest in the Parking Meter Commission power to fix parking meter fees within minimum and maximum limits, and eliminates the Zones provided in Section Six of Ordinance 48484; and Ordinance 49071, approved July 14, 1958, invalid "because it purports to transfer parking meter funds to the general revenue of the City, for general revenue purposes, and to authorize the use of parking meter funds for furthering the regulation of traffic including off-street parking for cities."

Additionally, the trial court enjoined defendants: (1) from mingling any fines collected for parking meter violations with the parking meter funds; (2) from transferring any parking meter funds to the general revenue fund of the City of St. Louis; and (3) from using or transferring any parking meter funds for off-street parking facilities.

After an unavailing motion for new trial defendants have appealed.

Defendants present their contentions on this appeal under four points and authorities. We will consider all of them but not in their numerical order.

Defendants contend the trial court erred in determining that Section Six of Ordinance 48484, the current Parking Meter Ordinance, is unconstitutional, claiming that such section does provide adequate standards for the Parking Meter Commission in the establishment of parking meter fees, and is not an unlawful attempt to delegate legislative power to an administrative agency. It provides:

"Section Six. Parking Meter Spaces, Zones and Fees. All parking meter spaces shall be at least twenty (20) feet, more or less, in length and clearly marked. In accordance with public convenience and necessity, there shall be three (3) zones. The Parking Meter Commission shall determine the zone applicable to each street or part thereof upon which meters are to be installed. The fee shall be five (5) cents in a thirty (30) minute zone. The fee shall not be more than one (1) cent for each twelve (12) minutes or five (5) cents for each hour in one (1) hour zones. The fee in a two (2) hour zone shall not be more than five (5) cents for each hour nor more than ten (10) cents for two (2) hours; provided, however, the Commission may set a five (5) cent fee for the full period of the two (2) hour zone. The Commission shall determine the hours during which parking meters shall be operative which, unless otherwise provided by ordinance, shall be between the hours of eight (8) a. m. and seven (7) p. m., except Sundays."

By the terms of Section Six of the ordinance the Parking Meter Commission is delegated the power to determine the minimum charge and to establish the specific charge not in excess of the established maximum charge for the one and two hour zones. Additionally, the commission is authorized to determine whether the particular zone area is to be designated (1) a thirty minute zone, or (2) a one hour zone, or (3) a two hour zone "in accordance with

public convenience and necessity." Failure of a person using the parking space to pay the fee thusly established by the administrative board is a misdemeanor under the terms of the ordinance. While Section Five of the ordinance contains guideposts for establishing the location of parking meters it does not contain any criterion for determining either the amount of the parking fee or the time limit to be applied, and it is of no aid in considering the validity of Section Six.

It is our view that the trial court was correct in holding that Section Six of Ordinance 48484 unlawfully delegated legislative power to the Parking Meter Commission. The regulation of traffic, including the establishment of the parking zones, with their time limitations, and the fixing of the fees thereof are legislative functions which cannot lawfully be delegated. Cf., Cavanaugh v. Gerk, 313 Mo. 375, 280 S.W. 51; Merchants' Exchange of St. Louis v. Knott, 212 Mo. 616, 111 S.W. 565, 568. It is axiomatic that a legislative body cannot delegate its authority, but alone must exercise its legislative functions. True, it may empower certain officers, boards and commissions to carry out in detail the legislative purposes and promulgate rules by which to put in force legislative regulations. It may provide a regulation in general terms, may define certain areas within which certain regulations may be imposed, and it may empower a board to ascertain the facts as to whether the location affected comes within the general regulation or within the designated or described area or zone. See, State ex rel. Priest v. Gunn, Mo.Sup., 326 S.W.2d 314, 320. Much more than that was attempted here. The ordinance fails to establish a single criterion or standard to guide the commission in fixing the fee to be charged within the maximum mentioned. This is an attempted delegation of a legislative power without adequate standards and is unlawful. Further, "in accordance with public convenience and necessity" is insufficient as

a criterion or standard for determining whether the particular meter zone shall be a thirty minute, one hour or two hour zone. Cf., Fairmont Inv. Co. v. Woermann, 357 Mo. 625, 210 S.W.2d 26; State ex rel. Continental Oil Co. v. Waddill, Mo.Sup., 318 S.W.2d 281, 285–286; State ex rel. Triangle Fuel Co. v. Caulfield, 355 Mo. 330, 196 S.W.2d 296.

In Kalbfell v. City of St. Louis, 357 Mo. 986, 211 S.W.2d 911, we recognized that there are exceptions to the general rule that an ordinance vesting such a broad discretion in public officials or boards without furnishing definite conditions, regulations, tests or standards is void, such exceptions generally arising· where the situation requires the placing of some discretion in the officers or board or the discretion relates to the administration of a proper police regulation. We acknowledged the tendency is to extend the discretion reposed in officials to meet the growing complexities of life, the multiplication of such regulations and the increased difficulty experienced in administering the laws. See, State ex rel. Priest v. Gunn, supra. But the establishment of the meter fee does not come within either the spirit or letter of those exceptions. As a practical matter it would be simple for the legislative body either to establish the exact parking fee or to establish legally sufficient standards and criterion for the Parking Meter Commission to follow in establishing the parking fee. This is also true with regard to the establishment of the various time zones.

Ordinance 48897, approved June 19, 1958, repealed Section Six of Ordinance 48484 and enacted a new Section Six in lieu thereof, which new section reads:

"Section Six. Parking Meter Spaces, Zones and Fees.—All parking meter spaces shall be at least twenty (20) feet, more or less, in length and clearly marked. In accordance with public convenience and necessity, the Commission shall establish fees for the use of designated parking spaces in accordance with the following schedule:

"(a) A minimum of one (1) cent to a maximum of two (2) cents for each twelve (12) minute space.

"(b) Five (5) cents for each thirty (30) minute space.

"(c) A minimum of five (5) cents to a maximum of ten (10) cents for each hour space.

"(d) A minimum of ten (10) cents to a maximum of twenty (20) cents for each two (2) hour space.

"The Commission shall determine the hours during which parking meters shall be operative between the hours of eight (8) a. m. and seven (7) p. m., except Sundays, unless otherwise provided by ordinance."

This new section provides minimum and maximum fees for the twelve minutes, hour and two hour spaces and delegates authority to the Parking Meter Commission to determine the fee to be charged within the minimum and maximum amount. Other than the vague phrase "in accordance with public convenience and necessity," no standards, guides or criterion are set out for the commission to follow in determining the particular fee to be charged within the minimum and maximum amount. Certain violations are made a misdemeanor, and if this ordinance is valid, the mere decision of an administrative board as to fee to be paid, unguided by legislatively ·established standards, would support conviction. As we have said, the fixing of the parking meter fee is a legislative function. Delegation of this function without adequate criterion or standards is unlawful. We note, also, that the ordinance fails to contain any method or criterion for establishing and locating the different time zones it otherwise contemplates. This ordinance is invalid as an unlawful attempt to delegate legislative authority to an administrative board.

In Point II defendants contend the trial court erred in determining that Ordinance 49071 which amends Section Ten of Ordinance 48484 is invalid and violative of Section 82.480, RSMo 1949, V.A.M.S., and in further enjoining the city from using or transferring any parking meter funds for off-street parking facilities, claiming that statutory section specifically authorizes use of such funds for off-street parking purposes.

Plaintiffs assert Ordinance 49071 is unlawful as violating both "the off-street parking statute," Section 82.480, RSMo 1949, V.A.M.S., and the "Parking Meter Statute," Section 304.120, RSMo 1949, V.A.M.S.

Ordinance No. 49071 provides that after paying the expenses of parking meter purchases, operation and control and associated materials and equipment and all salaries and expenses incidental thereto any uncommitted balance not immediately needed for salary and incidental expense purposes may be used "for the sole purpose of furthering the regulation of traffic including the provision for off-street facilities." It authorizes the comptroller to transfer to general revenue from the parking meter fund during the fiscal year 1958–59 a sum not to exceed $350,000. Of this named amount $200,000 has been transferred to general revenue. The city has in past years (July 1954–June 1958), under purported authority of other ordinances not before us, withdrawn a total of $78,121.64 from the parking meter fund for purposes of off-street parking.

Section 82.470, RSMo 1949, V.A.M.S., authorizes the city to acquire off-street parking facilities. Section 82.480, RSMo 1949, V.A.M.S., empowers the city to finance and pay for off-street parking facilities "by any one or combination of the following methods: (1) General revenue funds, including any proceeds derived from the leasing of said parking facilities; * * *."

Plaintiffs contend this statute does not authorize the city to finance its off-street parking facilities with on-street parking meter funds and support their argument by saying that other cities in this state by another statute are specifically authorized to use on-street parking meter receipts to finance off-street parking facilities. See, Section 71.360, RSMo 1949, V.A.M.S.

Defendants respond that the uncommitted parking meter fund balances, referred to in Ordinance No. 49071, are "general revenue funds" which the city is authorized by Section 82.480 to use to finance off-street parking facilities.

In State ex rel. Spink v. Kemp, 365 Mo. 368, 283 S.W.2d 502, 508, we were interpreting a statute providing in part and in effect that Kansas City must appropriate for the use of its police force each fiscal year up to one-sixth of "the general revenue fund of such year." We ruled that income accruing to the city for certain so-called governmental services and parking meter receipts were to be considered a part of "the general revenue fund of such year" for the purpose of establishing the one-sixth thereof mentioned in the statute.

In Board of Commissioners of City of Newark v. Local Government Board, 133 N.J.L. 513, 45 A.2d 139, the New Jersey Supreme Court held that income from a municipality's parking meters was not a "dedicated revenue" within the budget law, but was a "general revenue" of the city, notwithstanding that such income was applicable to the general function of regulating and controlling traffic and installing and operating the meters.

Neither the Missouri constitution nor any statute dedicates or earmarks on-street parking meter receipts as such for any special or limited purpose. It is generally recognized that, if properly authorized, on-street parking meter fees may be used for

off-street parking purposes.[1] Petition of City of Liberty, Mo.Sup., 296 S.W.2d 117; Bowman v. Kansas City, Mo.Sup., 233 S.W. 2d 26.

In City of Liberty, supra, 296 S.W.2d loc. cit. 121, we quoted from Skidmore v. City of Elizabethtown: "We think it is clear that the matter of parking, both on-street and off-street, is all part of the main traffic regulation problem, and therefore there is nothing improper in utilizing excess revenues from the parking meters to meet the costs of the overall traffic regulation police problem, or in fixing the parking meter fees at an amount that will produce such excess revenue."

If the statute had mentioned only "general revenue funds" and stopped there it is our view that these uncommitted surplus funds described in the ordinance would be general revenue funds within the purview of the statute. The additional words, "including any proceeds derived from the operation of the parking facilities" as used do not limit or restrict the meaning of "general revenue funds" but rather just emphasize one item that is within the meaning of "general revenue funds" so as to remove any possible doubt about that item. It is merely an illustrative and pertinent example of a general power already granted and not an enlargement of the definition of general revenue funds. Cf., State on inf. Huffman v. Sho-Me Power Co-op, 354 Mo. 892, 191 S.W.2d 971; State ex rel. Bibb v. Chambers, 138 W.Va. 701, 77 S.E.2d 297.

We believe that an uncommitted surplus of the type specified in the ordinance is within the legislative contemplation in its authorization of the use of general revenue funds as a means of financing the off-street parking facilities mentioned in the statute.

The fact that another statute, Section 71.360, RSMo 1949, V.A.M.S., covering cities from 1,000 to 700,000 (thus excluding St. Louis) was amended in 1955 to specifically provide that general revenue funds include proceeds from on-street parking meter receipts and later was amended in 1959 by removing that provision and by making other changes is a factor we may consider in arriving at the legislative intent. We are not persuaded that in the circumstances before us it means any more than that the legislature may have believed there was some uncertainty as to the authority of those cities covered by Section 71.360 to use the on-street parking meter funds for the off-street parking use, and was persuaded to remove any doubt by enacting the express provision. That statute has other provisions also different from those in Section 82.480 and we do not here undertake to interpret it.

■ We turn to plaintiffs' additional contention that Section 304.120, RSMo 1949, V.A.M.S., "the Parking Meter Statute," invalidates Ordinance 49071. That statute provides that a municipality may "(5) Regulate the parking of vehicles on streets by the installation of parking meters for limiting the time of parking and exacting a fee *therefor* or by the adoption of any other regulatory method that is reasonable and practical * * *." (Italics ours.)

The burden of plaintiffs' contention is that the above quoted language of this statute and especially the word "therefor" limits the parking fee extracted to the costs of administering and enforcing the on-street parking meter ordinance, and thus prohibits its use for other purposes such as the regulation of off-street parking. Defendants contend this language is merely the authorization of a parking meter fee for the privilege of parking without any

1. See, Sammons v. City of Beaufort, 225 S.C. 490, 83 S.E.2d 153; Lynn v. City of Fort Lauderdale, Fla., 81 So.2d 511; State ex rel. Gordon v. Rhodes, 158 Ohio St. 129, 107 N.E.2d 206; Poole v. City of Kankakee, 406 Ill. 521, 94 N.E.2d 416; 2 Yokley, Municipal Corporations, Section 423(f), page 515; Annotation, Municipal Off-Street Parking, 8 A.L.R.2d 373.

statutory designation as to what the fee may be used for or statutory limitation as to what expenses it may pay.

We agree with defendants' view of the statute. By its terms it does not undertake to limit parking meter fees to be used for the regulation of on-street parking only, but leaves the subject of use unmentioned.

Our conclusion is that the court erred in determining that Ordinance 49071 violated Sections 82.480 and 304.120, RSMo 1949, V.A.M.S.

The trial court also held Ordinance 49071 amending Section Ten of Ordinance 48484 invalid "because it purports to transfer parking meter funds to the general revenue of the city for general revenue purposes * * *" albeit the ordinance itself indicates the transfer is "for the sole purpose of furthering the regulation of traffic including the provision for off-street facilities."

It is plaintiffs' position that a parking meter ordinance can be sustained as a valid exercise of the police power only if the fees charged bear a reasonable relation to the cost of administering the parking meter system provided by the ordinance, and that, while mathematical exactness is not required, where the fees provided greatly exceed those costs the ordinance is a tax measure and thus not a valid exercise of the police power.[2]

It is defendants' position that parking meter fees collected under the police power can be used for the broader purpose of traffic regulation, and that the fact the fees provided exceed the cost of administering the Parking Meter Ordinance but do not substantially exceed the cost of traffic regulation generally, does not result in the ordinance establishing a tax, as for general revenue, rather than fees reasonably related to the police power exercised.[3]

Both plaintiffs and defendants are in accord that the City of St. Louis has no constitutional, statutory or charter power to levy parking fees under its *taxing* power.

It is the universally accepted rule that no municipal corporation possesses the authority to levy an excise tax absent proper constitutional, statutory, or charter authority. Siemens v. Shreeve, 317 Mo. 736, 296 S.W. 415; Carter Carburetor Corporation v. City of St. Louis, 356 Mo. 646, 203 S.W.2d 438; Kansas City v. J. I. Case Threshing Machine Co., 337 Mo. 913, 87 S.W.2d 195. Since St. Louis City has no authority to establish parking meter fees as a tax the parking meter fees in order to be validly imposed must be provided under authority of the police power of the city.

The City of St. Louis is empowered by Article I, Section 1(14) of its charter "To establish * * * streets * * * and regulate the use thereof." Section 35 of Article I thereof provides: "Incidental powers—To exercise all powers granted or not prohibited to it by law or which it would be competent for this charter to

---

2. See, Hendricks v. City of Minneapolis, 1940, 207 Minn. 151, 290 N.W. 428, 430; Owens v. Owens, 1940, 193 S.C. 260, 8 S.E.2d 339; In re Opinion of Justices, 1937, 297 Mass. 559, 8 N.E.2d 179; Annotation—Parking Regulations, Validity, 130 A.L.R. 316.

3. See, Skidmore v. City of Elizabethtown, Ky.1956, 291 S.W.2d 3; City of Hutchinson v. Harrison, 1952, 173 Kan. 18, 244 P.2d 222; Bellington v. Township of East Windsor, 17 N.J. 558, 112 A.2d 268; 9 McQuillin, Municipal Corporations, (3rd Ed.) Section 26.168; City of Rapid City v. Rensch, S.Dak.1958,

90 N.W.2d 380; Chase v. City of Sanford, Fla.1951, 54 So.2d 370; In re Opinion of the Justices, 94 N.H. 501, 51 A.2d 836; 1 Blashfield's Cyclopedia of Automobile Law and Practice, p. 158 (1948); Wilhoit v. City of Springfield, 1943, 237 Mo.App. 775, 171 S.W. 2d 95; Hickey v. Riley, 1945, 177 Or. 321, 162 P.2d 371; Harper v. City of Wichita Falls, Tex.Civ.App.1937, 105 S.W.2d 743; Bowers v. City of Muskegon, 305 Mich. 676, 9 N.W.2d 889; Board of Commissioners of City of Newark v. Local Government Board, 1945, 133 N.J.L. 513, 45 A.2d 139.

enumerate." Section 304.120(2) RSMo 1949, V.A.M.S., provides that municipalities, such as St. Louis, by ordinance "may make additional rules of the road or traffic regulations to meet their needs and traffic conditions; * * * (5) Regulate the parking of vehicles on the streets by the installation of parking meters for limiting the time of parking and exacting a fee therefor * * *."

█ It is abundantly clear that the City of St. Louis has full police power to regulate and control all traffic on its streets including the parking thereon. It is likewise clear that its power to regulate parking by the use of parking meters and to collect a fee therefor is granted to it as a police power function of traffic regulation on the public streets.

Plaintiffs have introduced a vast amount of evidence in support of their contention that St. Louis City has set its parking fees at such a large sum as to intentionally bring in far more revenue than is needed to administer its parking ordinance and, thereafter, deliberately increased its parking meter fees so as to bring in even greater revenue, thus disclosing that its Parking Meter Ordinance is but a tax measure in the thinly veiled disguise of a police regulatory measure. We are asked to declare it invalid as an unlawful tax measure.

It is unnecessary for us in this case to determine if the validity of these ordinances is to be tested by the relationship of the parking meter income to (1) the Parking Meter Ordinance expenses such as the cost of purchase, installation and maintenance of the meters and the enforcement of the parking meter system as plaintiffs contend, or to (2) the expenses of traffic regulation generally as defendants contend.

Our reason is that we have already found the Parking Meter Ordinance and its amending Ordinance 48897 to be invalid because Section Six, an integral and essential part thereof, is an unlawful delegation of legislative power to the Parking Meter Commission. While we may assume that St. Louis City through its legislative body will take steps to enact a new parking meter ordinance, we do not know what parking meter fees will be provided therein. We do not know how much revenue will be brought in by such a new ordinance or that such revenue would be greatly in excess of either the cost of establishing and administering the parking meter system or the cost of traffic regulation generally.

█ The fundamentals are clear. Such newly enacted ordinance would have to be enacted under the police power of St. Louis City to regulate its traffic. It may not be a tax ordinance in the guise of an ordinance enacted under the police power. It is for the court to determine, on all the pertinent facts, whether the primary and fundamental purpose of the ordinance is regulation under the police power or revenue under the tax power. The amount and purpose of revenue brought in by the ordinance are, of course, important factors in determining whether the ordinance is primarily a regulating one or a revenue one. However, in making such determination the court may look to and consider other relevant facts that bear on the question of the basic nature of the ordinance.

█ While the amount of revenue from the ordinance is an important factor in determining the primary purpose and, hence, the validity of the ordinance, the use to which that money can be put is an entirely different question. There is an important distinction between a rule that fees collected by exercise of the police power should bear a reasonable relationship to the cost of regulation, whether it be that of parking or traffic generally, and the rule contended for by plaintiffs, that such fees do not form a part of the general revenue of the city and are restricted in their use to the expenses incurred in administering the parking meter ordinance. In the absence of such money being earmarked or limited in its use by some constitutional or statutory provision it may be treated by the

city as general revenue and subjected to any proper municipal use.

We do not find merit in plaintiffs' contention that because an ordinance is enacted under the police power of the municipality *thereby* the funds therefrom become earmarked funds which the city must keep in a separate fund with its use limited to expenses arising out of the administration of the ordinance. If this were the law not only this fund but also the literally hundreds of city regulatory measures enacted under its police powers, and their revenues would be subject to such restrictions, and we know of no legal principle compelling such a burdensome result. We find that this contention of plaintiffs is not a valid reason for enjoining the city from transferring from its parking meter funds $350,-000 to the general revenue fund as provided in Ordinance 49071.

 Plaintiffs also contend that revenue from fines for violation of the Parking Meter Ordinance may not be transferred as provided in Ordinance No. 48898 to the parking meter fund. We know of no reason why the city may not make such transfer in the absence of some charter, statute or constitutional provision to the contrary, and our attention has not been directed to any. As we stated in State ex rel. Spink v. Kemp, supra, 283 S.W.2d loc. cit. 514, a city may "for its own purposes, lawfully divide its funds or allocate them in any manner it sees fit or subject its general revenue funds to particular public purposes, so long as it does not do so contrary to statute or its charter." Placing the revenue from fines in the parking meter fund in effect merely allocates and subjects it to expenses to be paid from that fund and the determination of such allocation in the absence of charter, statute or constitutional provision to the contrary is a proper legislative function of the city.

Plaintiffs' final contention is that "the Parking Meter Ordinances in their present form violate the due process, just compensation, equal protection and other clauses of the State and Federal Constitution." We note that the basis and premise of their contention is that these ordinances are an exercise of the tax power and not of the police regulatory power. Since the parking meter ordinances, to which plaintiffs refer only generally and without specific designation, in their present form have been held invalid as embodying an unlawful delegation of legislative power to an administrative group it is unnecessary for us to consider these constitutional questions. They may or may not arise if and when the city enacts a new Parking Meter Ordinance. In any event, the facts as they then appear will govern, and it would be improper for us to speculate as to what those facts will be.

 We are confronted with a situation where the city has a parking meter fund either part or all of which accumulated under invalid ordinances. No one is contending that he is entitled to a refund of any portion thereof, and, as a practical matter, it is impossible for the city to refund this money to those thousands who may have used the parking meters at the times in question. Under the peculiar circumstances, with the fund in existence, with no claimants to the fund and no refund possible, it is our view the city should not now be enjoined from transferring to general revenue and using the parking meter funds for furthering the regulation of traffic including the provision for off-street parking facilities as provided in Ordinance 49071.

This cause is reversed and remanded with instructions to the trial court to set aside its judgment and decree and in lieu thereof to enter a decree declaring Ordinance 48484 in the form in which it was originally enacted and as amended by Ordinance 48897 invalid as attempting an unlawful delegation of legislative power to an administrative tribunal, and permitting the transfers of money as provided by Ordi-

nance 49071 and 48898; all in accordance with the views and holding expressed in this opinion.

LEEDY, P. J., and EAGER and STORCKMAN, JJ., concur.