George W. Draper III, Judge,
concurring
I concur with the principal opinion’s holding invalidating Ordinance 1084 and affirming the circuit court’s judgment dismissing the City of Moline Acre’s (hereinafter, “City”) prosecution of Charles W. Brennan (hereinafter, “Brennan”). I write separately, however, to state that I.firmly believe City’s purported public safety ordinance imposing liability on an owner for a moving violation he or she did not commit and giving the owner no chance to demonstrate he or she did not grant permission to the operator to speed is nothing more *384 than a blatant money grab by City. I would invalidate ordinance 1084 on this ground as well.
“[W]hen confronting matters of public safety, courts should skeptically scrutinize manufactured legal fictions that may obscure the actual danger confronted.” Ballard v. City of Creve Coeur, 419 S.W.3d 109, 125 (Mo.App.E.D.2013) (Mooney, J., dissenting). A municipality’s traffic ordinance “may not be a tax ordinance in the guise of an ordinance enacted under the police power.” Automobile Club of Mo. v. City of St. Louis, 334 S.W.2d 355, 363 (Mo.1960). “It is for the court1 to determine, on all pertinent facts, whether the primary and fundamental purpose of the ordinance is regulation under the police power or revenue under the tax power.” Id. “The amount and purpose of revenue brought in by the ordinance are, of course, important factors in determining whether the ordinance is primarily a regulating one or a revenue one.” Id. The court may also “look to and consider other relevant facts that bear on the question of the basic nature of the ordinance.” Id.
Several recent court of appeals opinions addressing the validity' of red light camera enforcement programs have held the challengers made sufficient factual allegations to overcome motions to dismiss regarding whether the ordinances were enacted pursuant to the municipalities’ police power or as a plan to generate revenue. See Unver-ferth v. City of Florissant, 419 S.W.3d 76, 96 (Mo.App.E.D.2013) (holding challenger was entitled to conduct discovery and establish a factual basis for her allegation that primary and fundamental purpose of ordinance was revenue generation); Ballard, 419 S.W.3d at 121 (holding issue of whether ordinance was enacted as a proper exercise of police power as opposed to an unlawful revenue-generating tax measure is a fact question that is inappropriate for resolution on a dismissal motion); Edwards v. City of Ellisville, 426 S.W.3d 644, 661 (Mo. App. E.D. 2013) (finding error in dismissal of a claim alleging an ordinance was a revenue-generating scheme, but ultimately holding the ordinance was void, rendering the revenue-generating claim moot); and Damon v. City of Kansas City, 419 S.W.3d 162, 185 (Mo. App. W.D. 2013) (holding factual allegations that city officials “admitted that the purpose behind the camera program is to ‘make money’ and that ‘most of the income from the fines are [sic] going to the vendor, [ATS] ’ ” sufficient to overcome a motion to dismiss).
I find the discussion in Brunner v. City of Arnold, 427 S.W.3d 201 (Mo. App. E.D. 2013), informative on this issue. In Brun-ner, the court of appeals set forth in great detail the challengers’ allegations that questioned whether the city’s overriding purpose for enacting a red light camera ordinance was for revenue generation. Brunner, 427 S.W.3d at 226. The challengers pondered how public safety is promoted by an ordinance that does not assess points for a serious traffic violation, thereby authorizing unsafe drivers to remain on the road to run several more red lights thus, endangering others. Id. The challengers questioned how the creation of a rebuttable presumption aimed at punishing the owner, as opposed to the operator who committed the offense, promoted public safety when the rebuttable presumption permits the actual culprit to remain behind the wheel, again left to endanger others. Id. The challengers wondered how public safety is protected when an ordinance does not photograph the driver, thereby not assisting the municipality in prosecuting the actual culprit. Id. The challengers inquired about the fact that the ordinance generated “significantly more revenue than necessary” to offset the costs of enforcing the ordinance as demonstrated by the vendor administering the program re *385 ceiving approximately one-third of the fine collected. Id. at 227. Finally, the challengers asked why a municipality would enact an ordinance that permitted the prosecution of innocent individuals while decreasing the municipal resources expended by the city and simultaneously increasing its revenue. Id. The Brunner court found the answers to these allegations “would seem to favor generation of revenue as the primary purpose of the [ordinance.” Id.
In this case, City’s traffic enforcement program was enacted under the guise of promoting public safety, by purporting to enforce every motor vehicle owner’s duty to ensure that his or her vehicle complies with the prescribed speed limits, without regard to whether the owner actually operated the vehicle at the time of the infraction. It is troubling that City’s scheme subjects an innocent owner to liability for merely entrusting his or her vehicle to a family member, friend, acquaintance or coworker. Not only must this innocent owner pay the penalty imposed, but the owner must also be assessed points for a moving violation that he or she did not commit. Under this scheme, , it is not out of the realm of possibility for a parent with two eager, teenaged drivers to amass assessed points rather quickly, thus jeopardizing the parent’s ability to drive legally while the teenagers remain on the road as potential threats to public safety. If the true aim of City’s ordinance is to promote public safety, the imposition of liability against the owner, rather than the operator/ does little to attain that goal. Rather, it comes across as a mechanism for generating revenue for City.
This Court should be cognizant of the times in which these ordinances are being enforced in light of the recent criticisms of St. Louis County municipalities, which have used traffic violations and the revenue they generate to enrich their coffers to the financial detriment of the citizens they are ostensibly protecting.