

# SUPREME COURT OF MISSOURI
## en banc

CITY OF MOLINE ACRES,     )
                                  )
          Appellant,     )
                                  )
v.                            )     No. SC94085
                                  )
CHARLES W. BRENNAN,     )
                                  )
          Respondent.     )

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
The Honorable Mary B. Schroeder, Judge

*Opinion issued August 18, 2015*

The City of Moline Acres ("City") appeals from the dismissal of the City's charge against Charles Brennan ("Brennan") for violating City code section 395.010 (the "Ordinance"). Brennan pleaded not guilty, and the matter was certified for jury trial to the St. Louis County Circuit Court. There, Brennan filed a motion to dismiss the charge, claiming that the Ordinance and the City's notice of violation ("Notice") contradict state law and/or violate due process. The circuit court sustained Brennan's motion and dismissed the charge with prejudice. That judgment is affirmed.

### Background

In 2012, the City adopted the Ordinance as part of the City's traffic code. It states, in pertinent part:

> Every motor vehicle owner has a duty to ensure that their motor vehicle at all times complies with the prescribed speed limits. It shall be deemed a violation of Public Safety on Roadways for the Owner to permit their motor

vehicle to be operated at a rate of speed in excess of the posted speed limit where the violation is captured by an Automated Traffic Enforcement System ….

City Code § 395.010.

On July 31, 2012, the City's automated Traffic Enforcement System's camera photographed a vehicle owned by Brennan travelling at 56 miles per hour where the posted speed limit was 45 miles per hour. The City sent Brennan a document dated August 10, 2012, titled "Notice of Violation," which contains several provisions relevant to this appeal.

First, the Notice advised Brennan that "[i]t has been determined that your vehicle was operated in a manner that violated public safety by exceeding the speed limit" and that "as the registered owner(s) or lessee you are liable for the violation of Traffic Safety on Roadways." Second, the Notice states that Brennan owed a "penalty" in the amount of $124[1] for committing this violation and that this payment was "due" before September 1, 2012.[2] Third, the Notice states:

> Full payment before the due date of this Notice will prevent this matter from being referred to the prosecutor for filing of an information in the Moline Acres Municipal Court. Upon filing of an information, a summons for you to appear in the Moline Acres Municipal Court will be issued and court costs will be assessed and become payable in addition to the amount of this fine.

Fourth, the Notice advised Brennan that he could pay his "penalty" by mailing a check "payable to the City of Moline Acres" to the address for the "City of Moline

---

[1] The record does not explain why the Notice advised Brennan he owed a penalty of $124 even though the Ordinance provides that the fine for all violations will be $130.

[2] Brennan later received an identical Notice, also dated August 10, which states Brennan's "penalty" was "due" on or before October 1, 2012.

Acres – Automated Traffic Enforcement Division," by paying with a credit card by calling a toll free number, or by accessing a website dedicated to the City's automated traffic enforcement scheme. Fifth, the Notice states: "If you do not wish to resolve this matter outside of the municipal court system, and you do not remit payment as herein requested, a summons will be issued for you to appear in Municipal Court." Finally, the Notice states that Brennan's violation is a "non-moving violation" and, therefore, "[n]o points will be assessed against your driver's license."

Brennan retained counsel, pleaded not guilty, and demanded a jury trial. His case was certified to the circuit court. On December 6, Brennan filed a motion to dismiss the charge on the ground that the Ordinance and Notice are invalid and unenforceable. He argued that the Ordinance and Notice: (1) contradict state law, which makes the driver (and only the driver) liable for moving violations such as speeding; (2) contradict state law because they do not require points to be assessed even though violations of the Ordinance are "moving violations" for purposes of section 302.302.1;[3] (3) violate due process because they shift the burden of proof to the defendant on an essential element of the offense; (4) violate due process because the Notice did not comply with Rule 37.33(a) in that it did not tell Brennan the date and time of his initial court appearance and did not set forth facts showing probable to cause to believe Brennan violated the Ordinance.

After a hearing, the trial court sustained Mr. Brennan's motion and entered judgment dismissing the City's information on the ground that the Ordinance and Notice contradict state speeding statutes (i.e., sections 304.009, RSMo 2000, and 304.010). The

---

[3] Unless otherwise indicated, all statutory references are to RSMo Supp. 2012.

3

City appealed and, following an opinion by the court of appeals, the appeal was transferred to this Court. Mo. Const. art. V, sec. 10.

## Standard of Review

The dismissal of an information charging an ordinance violation is reviewed de novo where the dismissal is based solely on questions of law. *Cf. State v. Honeycutt*, 421 S.W.3d 410, 413-14, (Mo. banc 2013) (dismissal of felony count reviewed de novo); *State v. Sisco*, 458 S.W.3d 304, 313 (Mo. banc 2015) (ruling on motion to dismiss based on constitutional right to speedy trial reviewed de novo, though deference is given to related factual findings).

## Conflict with State Law

In its first point, the City asserts that the circuit court erred in dismissing the information against Brennan based on a conflict between the Ordinance and sections 304.009 and 304.010. The Court agrees. Because no such conflict exists, the information should not have been dismissed on that basis.

Section 546.902, which applies to cities in St. Louis County (including Moline Acres), authorizes these cities to "enact and make all such ordiances and rules, not inconsistent with the laws of the state, as may be expedient for maintaining the peace and good government and welfare of the city …." Similarly, section 79.110 authorizes fourth-class cities (including Moline Acres) to "enact and ordain any and all ordinances not repugnant to the constitution and laws of this state and such as they shall deem expedient for the good government of the city …." A conflict of the sort that will invalidate a local ordinance exists only if "the ordinance permits what the statute

4

prohibits or prohibits what the statute permits." *Page W., Inc. v. Community Fire Prot. Dist. of St. Louis County*, 636 S.W.2d 65, 67 (Mo. banc 1982) (quotations marks omitted). This Court will adopt any reasonable construction necessary to avoid such a conflict "unless the ordinance is expressly inconsistent or in irreconcilable conflict with the general law of the state." *McCollum v. Dir. of Revenue*, 906 S.W.2d 368, 369 (Mo. banc 1995).

Section 304.010 provides uniform speed limits for roads and highways, subject to alteration by local governments under certain circumstances. Under section 304.010.11, exceeding any of these limits by more than five miles per hour is a class C misdemeanor. Section 304.120.1 permits cities to establish "reasonable speed regulations for motor vehicles within the limits of such municipalities," but such ordinances may not be "contrary to or in conflict with this chapter, except as herein provided." § 304.120.3.

In his motion to dismiss, Brennan argued that the Ordinance contradicts section 304.010 because it purports to make vehicle owners – not drivers – liable for the act of speeding and because it reduces speeding to an infraction rather than the misdemeanor required by state law. The City contends that this argument must fail because it is based on the erroneous premise that the Ordinance prohibits speeding. To the contrary, the City maintains that the purpose of the Ordinance is not to punish speeding, but to punish the very different act of an owner giving someone else[4] permission to use the owner's vehicle to exceed the speed limit.

---

[4] As construed by the City, the Ordinance cannot apply when the owner also is the driver. The offense of "permitting" *yourself* to drive in excess of the speed limit is indistinguishable from

The Court is bound to acknowledge that the City is correct. The Court is limited to construing the language of the Ordinance, and this language does not purport to regulate speeding.[5] Instead, the Ordinance is carefully drafted to regulate only the conduct of vehicle owners, not drivers, and it prohibits such owners from giving permission for "their motor vehicle to be operated at a rate of speed in excess of the posted speed limit." Accordingly, the Ordinance does not permit what section 304.010 prohibits, and the Ordinance does not prohibit what section 304.010 permits.[6] *Page W.*, 636 S.W.2d at 67. Without such a conflict, the trial court erred in dismissing the charge against Brennan on this ground.

Even though the trial court erred in dismissing the charge against Brennan for the reason it did, an "appellate court is 'primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result.'" *American Eagle Waste Indus., LLC v. St. Louis County*, 379 S.W.3d 813, 829 (Mo. banc 2012). For that reason, when reviewing the trial court's ruling on a motion to dismiss, the "judgment will be affirmed if cognizable under any theory, regardless of whether the reasons advanced

the offense of speeding, which the City strenuously and repeatedly assures the Court is not the subject of this Ordinance.

[5] For purposes of this case, it does not matter whether the Ordinance was enacted to protect residents from the threat to public safety posed by vehicle owners who permit others to speed in their vehicles, as the City claims, or whether it is a poorly camouflaged attempt to increase the number of speeding convictions (and fines) without having to prove the identity of the speeder. The Court is obligated to take the Ordinance, and its stated purpose, at face value.

[6] Section 304.120.4 states: "No ordinance shall impose liability on the owner-lessor of a motor vehicle when the vehicle is being permissively used by a lessee and is illegally parked or operated if the registered owner-lessor of such vehicle furnishes the name, address and operator's license number of the person renting or leasing …." By prohibiting such ordinances only where the driver is a lessee, however, section 304.120.4 implicitly allows ordinances – like the City's Ordinance – that impose liability on the owner when the vehicle is "illegally parked or operated" by a third person operating the vehicle with the owner's permission but not as a lessee.

6

by the trial court are wrong or not sufficient." *Id*. Here, Brennan also argued in the trial court that the Ordinance contradicted sections 302.302 and 302.225. He claimed that, because section 302.302.1(2) requires that at least two points must be assessed for the violation of any speeding law or ordinance, the Ordinance contradicts this statute because it does not require the assessment of any points in the event of a violation.

Again, the City argues on appeal that Brennan's argument is based on the faulty premise that the Ordinance prohibits speeding. Because the Ordinance prohibits vehicle owners from permitting others to speed in their vehicles, not the act of speeding itself, the City contends that no points will be assessed. Even though the Court is bound to agree that a violation of the Ordinance will not result in the assessment of points for speeding under section 302.302.1(2), the City is incorrect that no points are to be assessed when an owner is convicted of or pleads guilty to violating the Ordinance.

Section 302.302.1 identifies various categories of traffic offenses and the number of points that must be assessed for a violation in each category. Not surprisingly, this statute does not specifically address innovative owner-liability provisions such as the Ordinance. In section 302.302.1(1), however, there is a catchall provision that states that two points shall be assessed for any "moving violation of a state law or county or municipal or federal traffic ordinance or regulation not listed in this section[.]" For purposes of section 302.302.1(1), a "moving violation" is defined as:

> [T]hat character of traffic violation where ***at the time of violation the motor vehicle involved is in motion***, except that the term does not include the driving of a motor vehicle without a valid motor vehicle registration license, or violations of sections 304.170 to 304.240, inclusive, relating to sizes and weights of vehicles.

7

§ 302.010(13) (emphasis added).

Here, the Ordinance prohibits owners from permitting others to speed using their vehicles. A violation of the Ordinance does not occur, however, unless and until the owner's car is photographed exceeding the speed limit. This means that a violation of the Ordinance qualifies as a "moving violation" because "at the time of the violation the motor vehicle involved is in motion[.]" § 302.010(13). Accordingly, section 302.302.1(1) requires that two points be assessed if an owner is convicted of or pleads guilty to violating the Ordinance.[7]

Even if section 302.302.1(1) requires that points be assessed for a violation of the Ordinance, the City argues that the Ordinance does not contradict this state law because the Ordinance does not address whether points will – or will not – be assessed. The City is correct. The assessment of points is an administrative – and wholly nondiscretionary – matter. Under section 302.302.1, the Director of Revenue must "put into effect a point system for the suspension and revocation of licenses." Then, under section 302.225.1, all courts must forward to the Director "a record of any plea or finding of guilty of any person in the court for ... any moving traffic violation under the laws of this state or county or municipal ordinances." Finally, when the Department of Revenue receives such a record, the Director must assess the number of points determined in section 302.302. Neither the Director, nor the court, nor the local legislative body that enacted

---

[7] The legislature plainly intended that points would be assessed against a vehicle owner based on the driving of a third party in some circumstances. *See* § 302.302.1(12) (owner will be assessed points if convicted of "[k]nowingly permitting unlicensed operator to operate a motor vehicle").

8

the ordinance has any say in whether, when, or how many points should be assessed for a particular violation.

As a result, if an ordinance declares that no points will be assessed for a violation that (under state law) qualifies as a "moving violation," that portion of the ordinance is invalid because it contradicts section 302.302.1(1). *See Roeder v. City of St. Peters*, __ S.W.3d __ (Mo. banc 2015) (No. SC94379) (where a violation of the ordinance is a "moving violation," the provision in ordinance stating that no points will be assessed is invalid and unenforceable). But, it does not necessarily follow that the Ordinance in this case also is invalid. Unlike the ordinance in *Roeder*, the City's Ordinance is silent concerning the assessment of points. Accordingly, there is no conflict between the Ordinance and section 302.302.

Brennan's argument focused on the Notice, not the Ordinance. The Notice states: "No points will be assessed against your driver's license." Brennan argued that this was sufficient to make the Ordinance invalid, citing *Unverferth v. City of Florissant*, 419 S.W.3d 76, 84 (Mo. App. 2013), which holds that a notice of violation stating (incorrectly) that no points will be assessed creates a conflict with state law even though the ordinance is silent on the issue. This Court is not persuaded by *Unverferth* in this regard, however, because it disregards the generally accepted principle that a conflict between state and local law cannot exist with regard to an issue on which the local ordinance is silent. *See* 56 Am. Jur. 2d *Municipal Corporations, Etc.* section 315 (2015); 62 C.J.S. *Municipal Corporations* section 190 (2015). This principle is a necessary corollary to the requirement that courts must construe ordinances to uphold their validity

9

and avoid conflicts whenever possible. *State ex rel. Teefey v. Bd. Of Zoning Adjustment of Kansas City*, 24 S.W.3d 681,685 (Mo. banc 2000). Accordingly, *Unverfeth* is overruled on this point, and the Court holds that the Ordinance is not invalid due to a conflict with section 302.302.1. With no such conflict, the trial court's dismissal cannot be affirmed on this basis.

## Unconstitutional Shifting of the Burden of Proof

The City also argues that the Ordinance does not unconstitutionally shift the burden of proof, as Brennan claimed in his motion to dismiss. Brennan argued that the Ordinance is unenforceable because it presumes the owner of a vehicle was driving that vehicle at the time it was caught speeding by the City's automated enforcement cameras. According to Brennan, this presumption unconstitutionally shifts the burden of proof from the City to the defendant on the element of the driver's identity. In support, Brennan cites *Damon v. City of Kansas City*, 419 S.W.3d 162, 191 (Mo. App. 2013), which holds that a "rebuttable presumption that the owner was also the driver is a necessary element to a violation of this ordinance and therefore would be unconstitutional in the context of a violation that is criminal in nature." *See also Brunner v. City of Arnold*, 427 S.W.3d 201, 231 (Mo. App. 2013) ("ordinance that is criminal in nature cannot create a rebuttable presumption as this would infringe upon a fundamental canon and procedure of this country's and this state's criminal justice system: an accused is deemed innocent until proven guilty").

Like both of Brennan's conflict arguments above, this argument also is based on the erroneous premise that the Ordinance prohibits speeding. Laboring (as the Court

10

must) under the fiction created in the City's Ordinance, the evil being legislated against in the Ordinance is not speeding, but the act of owning a vehicle and permitting someone else to use the vehicle to exceed the speed limit. As a result, under the City's Ordinance, the identity of the driver is not an element of the offense and there is no need to create (or for the City to rely upon) an owner-equals-driver presumption.

But this is not the end of the analysis. In this appeal, the City insists that the Ordinance creates – and the City is entitled to rely upon – a rebuttable presumption that anyone driving an owner's vehicle does so with the owner's permission. *See, e.g.,* City's Reply Brief at pp. 4-5 ("The City's Ordinance … applies the rebuttable presumption that the vehicle owner consented to the use of his/her vehicle by the operator, ***not*** on a presumption that the owner was the operator.") (emphasis in original).[8]

More importantly, this presumption necessarily extends to allowing the factfinder to find that the owner gave the driver specific permission to use the vehicle to exceed the speed limit.[9] Under the Ordinance, a violation occurs only if an owner "***permit[s]*** their motor vehicle to be operated at a rate of speed in excess of the posted speed limit." [Emphasis added.] As a result, in addition to proving the elements (1) that a vehicle was

---

[8]  *See also* City's brief at p. 57 (the justifications in the ordinance "relate to the City's authorized presumption in the Ordinance that the vehicle was being operated with the owner's permission at the time the offense occurred"); City's reply brief at p.7 n.5 ("the City's Ordinance presumes that an owner has consented to the use of their vehicle and holds them responsible for safety violations detected by photo enforcement").

[9]  As explained below, the City raises (and defends) this presumption because – without it – the City has no basis for arguing that the Notice sets forth facts showing probable cause to believe Brennan violated the Ordinance. The only facts included in the Notice are that a vehicle owned by Brennan was photographed exceeding the speed limit. The City contends that it may infer the third element – that Brennan specifically permitted the driver to use his vehicle for the purpose of speeding – solely from Brennan's ownership.

photographed exceeding the speed limit and (2) that the person charged was the owner of that vehicle, the City *also* must prove beyond a reasonable doubt (3) that the owner gave the driver the specific permission to "operate[] [the vehicle] at a rate of speed in excess of the posted speed limit."

The City concedes that it must prove all three of these elements, but it argues that the Ordinance creates a presumption to aid the City in proving the third element, i.e., that the owner gave the driver specific permission to exceed the speed limit. The City contends that:

> the City must prove, and it cannot shift the burden to the defendant, that:
> (1) the defendant owned the vehicle; and (2) the defendant's vehicle
> exceeded the posted speed limit. The burden of establishing either of those
> elements has not been shifted to Mr. Brennan. As acknowledged in *Hertz*,
> ***proof of ownership includes a rebuttable presumption of consent to***
> ***operation***.

City's Br. at p. 57 (emphasis added).[10]

---

[10]   Even though language expressly stating that ownership gives rise to a presumption that the owner gave the driver specific permission to use the owner's vehicle to speed was added to the Ordinance in 2013, the City argues that this presumption is implicit in the "justifications" listed in the original Ordinance. City's Brief at p. 57. In addition, the City states:

> Again, the City's Ordinance presumes that an owner has consented to the use of
> their vehicle and holds them responsible for safety violations detected by photo
> enforcement, because "[e]very motor vehicle owner has a duty to ensure that their
> motor vehicle at all times complies with the prescribed speed limits." [L.F. at 22].
> As such, the Ordinance excuses owners whose vehicles were stolen or utilized
> without their "effective consent." *Id.*

City's Reply Brief at p. 7 (the legal file citation is to the original Ordinance, not to the 2013 amendment). The City contends this Court "authorizes use of a rebuttable presumption with respect to the owner's consent to the use of their vehicle by the operator" in *City of Kansas City v. Hertz Corp.*, 499 S.W.2d 449, 453-54 (Mo. 1973), and *City of St. Louis v. Cook*, 221 S.W.2d 468, 470-71 (Mo. 1949). As discussed below, the City's argument is a misapplication of these decisions.

12

By making this presumption an integral part of its argument in this appeal, the City realizes it must defend against the same constitutional challenge that was sustained in *Damon* and *Brunner*. *See Sandstrom v. Montana*, 442 U.S. 510, 523 (1979) (presumption of innocence prohibits the government from relying upon a rebuttable presumption to establish an element of a crime because this has the effect of shifting the burden of proof to the defendant).

To defend its presumption, the City insists that *Sandstrom* applies only in criminal cases and a violation of the Ordinance is not a crime. Instead, the City maintains that a prosecution under the Ordinance is only a civil proceeding or, at most, merely quasi-criminal.[11] The Court need not resolve the question of the whether this presumption is unconstitutional under *Sandstrom*, however, because that case applies only to presumptions that otherwise are valid. The Ordinance's presumption is not constitutionally permissible in any proceeding, civil or criminal.

In this context, a permissive or rebuttable presumption is merely an inference that the legislative body tells the fact finder it may (but does not have to) draw. *Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 770 (Mo. banc 2010). Legislation may create such presumptions only within the limits of reason. In civil cases, therefore, it is "essential that there shall be some rational connection between the fact proved and the ultimate fact

---

[11] Employing the factors listed in *Brunner*, 427 S.W.3d at 232 (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)), the City contends that the Ordinance is not criminal because: (a) there is no corresponding state law crime; (b) the Ordinance expressly refers to "civil fines;" (c) the Ordinance does not permit a violator to be imprisoned under any circumstances; and (d) points are not assessed against an owner convicted of violating the Ordinance. The City's proposed weighing and balancing of these factors fails to account for this Court's holding that points must be assessed for violations of the Ordinance.

13

presumed (or inferred), and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate." *Borden Co. v. Thomason*, 353 S.W.2d 735, 755 (Mo. banc 1962) (internal quotation marks omitted) (citing *Mobile, Jackson & Kansas City R. Co. v. Turnipseed*, 219 U.S. 35, 43 (1910)).

Similarly, in criminal cases, there must be a "rational basis" for the presumption such that the presumed fact is "more likely than not to flow from" the proved fact. *County Court of Ulster County, N. Y. v. Allen*, 442 U.S. 140, 142 (1979). Because the language of these two tests (one drawn from criminal cases and the other from civil cases) varies somewhat, it is conceivable that a presumption could be allowable under one test but not the other. The Court need not confront this possibility here, however, because the Ordinance's presumption clearly fails both tests.

The City claims that the Ordinance allows the fact finder to infer – solely from the fact that the defendant owns the vehicle that was photographed speeding – that the person driving the vehicle had the owner's permission to use the vehicle and, specifically, that the owner "permit[ted] their motor vehicle to be operated at a rate of speed in excess of the posted speed limit." Even if the Court assumes that there is some rational connection between ownership of a vehicle and permission to use that vehicle generally, this connection does not stretch far enough to allow the finder of fact to infer from ownership the very specific permission to exceed the speed limit that the Ordinance requires. There is no "rational basis" for this inference because it cannot be said that such specific permission is "more likely than not to flow from" mere ownership.

The City's reliance on *City of Kansas City v. Hertz Corp.*, 499 S.W.2d 449, 453-54 (Mo. 1973), and *City of St. Louis v. Cook*, 221 S.W.2d 468, 470-71 (Mo. 1949), is decidedly misplaced. *Cook* expressly relied on *Turnipseed* in stating that a presumption will be valid provided there is "some rational connection" between the foundational fact and the inferred or elemental fact, and the inference must not be "so unreasonable as to be a purely arbitrary mandate." *Cook*, 221 S.W.2d at 470. Because there is no rational connection between ownership and permission to drive in excess of the speed limit, such an inference cannot be legislated even on a permissive basis.

Moreover, *Cook* and *Hertz* deal solely with an ordinance that imposes liability on a vehicle owner for the illegal parking whether there was proof the owner parked the car or not.[12] These cases would be analogous (though, for reasons discussed below, not persuasive) if the Ordinance made owners liable for the speeding of others, but, as the City repeatedly insists, this is not what the Ordinance does. Instead, the Ordinance imposes liability on owners based on their own conduct in ***permitting*** a third party to use their vehicle for speeding. Accordingly, *Cook* and *Hertz* offer no guidance here.

In addition, *Cook* and *Hertz* stress that a parking ticket is a *de minimus* charge. *Cook*, 221 S.W.2d at 471; *Hertz*, 499 S.W.2d at 454. The City argues that a violation of the Ordinance also is *de minimus* because – like a parking ticket – no points are assessed

---

[12] In *Cook*, the Court noted that the ordinance rendered owners liable because ownership was sufficient to prove that the owner either committed "or authorized" the illegal parking. *Id*. at 468. *Hertz*, on the other hand, characterized the ordinance in *Cook* as requiring proof that the owner actually parked the car illegally but allowing the finder of fact to infer the illegal conduct solely from ownership. *Hertz*, 499 S.W.2d at 452. After restating the holding in *Cook*, however, *Hertz* proceeds to extend that holding to make it clear that an ordinance is not unconstitutional even if it imposes strict liability on the owner of an illegally parked car, i.e., liability regardless of whether the owner was the one who parked the car illegally. *Id.* at 453-54.

15

against the owners' licenses in the event of a violation.  This tent-pole argument has now collapsed, however, in light of the Court's holding that section 302.302 requires points be assessed each time an owner pleads guilty to or is found guilty of the moving violation defined by the Ordinance.  The consequences of violating the Ordinance are not *de minimus*.

Even if points were not assessed, the City's efforts to equate a conviction for violating the Ordinance with a parking ticket still must fail.  The City admits that the Ordinance does not impose the sort of strict liability on owners that was at issue in *Cook* and *Hertz*.  Instead, the Ordinance imposes liability only on those owners who "permit their motor vehicle to be operated at a rate of speed in excess of the posted speed limit." Having chosen to make this specific permission an element of the offense, the City cannot relieve itself of the burden of proving this element by means of an irrational presumption that ownership alone implies such permission.  Nor can the City justify that presumption by comparing the Ordinance to the parking ordinance at issue in *Cook* and *Hertz*, where the ordinance at issue did not require proof that the owner give such specific permission.  Accordingly, to the extent the Ordinance allows the finder of fact to infer from ownership alone that the owner "permit[ted] their motor vehicle to be operated at a rate of speed in excess of the posted speed limit," that presumption is unconstitutional.

Finally, the City argues that – even if the Ordinance's presumption is unconstitutional – this does not render the entire Ordinance invalid or serve as an alternative basis for affirming the dismissal of the charge against Brennan.  The City is correct.  In a "red light camera" case, for example, the validity of a presumption that

16

deems an owner to be the driver is irrelevant if the photographs provide sufficient evidence for the jury to find that the owner was the driver without resorting to that presumption. The same is true here. The City can still charge violations of the Ordinance if it can state facts in the Notice showing probable cause that the owner gave the driver specific permission to use the owner's vehicle for speeding and if it can prove this element beyond a reasonable doubt at trial, without relying on the unconstitutional presumption. Dismissal is the proper remedy if the City's Notice fails to show probable cause; a directed verdict of acquittal is the proper remedy if the City fails to prove this element at trial. In either instance, however, the Ordinance remains valid. Accordingly, the trial court's dismissal of the charge against Brennan cannot be affirmed solely because the Ordinance creates an unconstitutional presumption that the City cannot use.[13]

### Notice Defects

Finally, the City argues that the defects in the Notice raised by Brennan in the trial court do not render the Ordinance invalid or unenforceable and, therefore, those defects are not a sufficient basis on which to affirm the circuit court's dismissal of Brennan's information. Brennan claimed that the Notice failed to identify the date and time of his

---

[13] Brennan also attacked the process by which the Ordinance allows owners to submit an affidavit asserting various "justifications" (e.g., the car was recently stolen, the driver was acting under the direction of a police officer, etc.) when they receive a Notice. This argument does not justify dismissal. As the Court holds below, the City's Ordinance is unconstitutional because it creates a scheme by which the City can collect payments for alleged violations of the Ordinance outside of – and with no supervision by – the courts. In that context, the affidavit process attacked by Brennan takes place prior to the filing of the information in court. As a result, it is merely an opportunity to try and convince the prosecutor not to file the charge at all. It has nothing to do with the City's burden of proving a charge once the information is filed. At trial, the City must prove beyond a reasonable doubt that the defendant committed the violation, including the nonexistence of any of the legal justifications set out in the Ordinance that the evidence shows may have been present.

17

first court appearance and that it failed to set forth facts showing there was probable cause to believe Brennan violated the Ordinance. Brennan argued that, because of these defects, the Notice did not comply with Rule 37.33(a) and prosecution based on an information supported by such a defective notice would violate his right to due process of law.[14]

On appeal, the City argues that Brennan waived his claims concerning the Notice because he was able to appear and defend the charge against him. This is incorrect. Brennan did not claim that the Notice failed to provide fair notice and an opportunity to be heard. Instead, Brennan argued that the information was not valid under Rule 37.34 because it was not supported by a Notice that met the requirements of Rule 37.33 and that allowing the City to proceed on such a deficient information would violate due process. As noted in the margin, Brennan's argument was based on the trial court ruling that was affirmed in *Smith v. City of St. Louis*, 409 S.W.3d 404, 415 (Mo. App. 2013) (holding that the "City's enforcement of the Ordinance does not provide the process and notice

---

[14] Brennan's motion, filed in December 2012, argued that Brennan's charges should be dismissed based on Judge Neill's dismissal of charges in a St. Louis City Circuit Court "red light" case. Copies of that decision were provided to the court and the City. Judge Neill's decision later was affirmed in relevant part by the court of appeals, which described the argument on which Brennan relied as follows:

> In its Final Judgment, the trial court concluded the Ordinance violates procedural due process because no summons or court date is provided with the Notice of Violation. Rather, a court date is provided only with the Final Notice, and is not sent to the vehicle owner until after the due date for paying the fine has passed. The trial court also found that the Notice did not inform the recipient of the right to contest the violation, except in cases where the affidavit of non-responsibility applies. As a result, the trial court found that City's enforcement of the Ordinance violates procedural due process.

*Smith v. City of St. Louis*, 409 S.W.3d 404, 415 (Mo. App. 2013). Here, the transcript of Brennan's argument in the trial court confirms that this is the argument he made.

18

mandated by the Missouri Supreme Court rules for traffic offenders in this state" because the notice of violation failed to comply with the requirements of Rule 37.33).

When a person is charged with violating an ordinance, the notice of violation plays a key role in communicating the nature of the charge and the defendant's rights and options. To ensure this is done fairly and uniformly despite the high volume of traffic and other ordinance violations brought each year, this Court prescribes in detail the information that must be included in these notices and the form these notices must take. *See* Rule 37.33 and Form 37.A. And, to make sure that this rule and form are followed, this Court requires that all ordinance violations be prosecuted by information, which "shall be supported by a violation notice *as prescribed by* Rule 37.33." Rule 37.34 (emphasis added).

Rule 37.33(a)(1) requires that any notice issued for violating a city ordinance "shall State the name and address of the court." The top three lines of the Uniform Citation set forth in Form 37.A require the notice to state the name, division and street address of the circuit court where the violation will be prosecuted and the date and time of the defendant's initial appearance. The Notice received by Brennan failed to include *any* of this required information.

Rule 37.33(a)(5) requires that any notice issued for violating the City's Ordinance "shall State facts that support a finding of probable cause to believe the ordinance violation was committed and that the accused committed it." The Uniform Citation set forth in Form 37.A provides a space for the officer to aver that the owner "did then and there commit the following offense," with a space for the officer to write in the specific

19

facts showing probable cause. In Brennan's Notice, no facts were stated showing probable cause that Brennan violated the Ordinance. Instead, the blank merely contains the phrase: "Violation of Public Safety on Roadways."

Elsewhere, the Notice states that "the vehicle described and pictured herein was photographed violating public safety by exceeding the posted speed. Therefore, under Moline Acres Ordinance #1684, as the registered owner(s) or lessee you are liable for the Violation of Traffic Safety on Roadways." These two sentences can constitute probable cause only if the Court holds: (a) that the Ordinance does not require proof the owner gave the driver specific permission to speed in the owner's vehicle or (b) that this specific permission may be inferred solely from the fact that the defendant owned the vehicle later photographed speeding. As to the former, the City repeatedly insists that such specific permission is a required element under the Ordinance, and the language of the Ordinance admits of no other reading. This Court agrees. As to the latter, the Court holds above that any presumption allowing the City to prove this specific permission solely from proof of ownership is unconstitutional. As a result, the Notice does not comply with Rule 37.33(a)(5) because it does not state facts showing probable cause as to this element of specific permission.

Moreover, the defects in the Notice are instrumental in implementing the fundamentally unauthorized nature of the extra-judicial process enacted by the Ordinance. The Ordinance creates a system by which vehicle owners are accused of violating the Ordinance, not in court where their rights are well established and can be protected, but in a letter from the police. The owners are told to make payments, not as

20

fines owed upon conviction, but as ransom that will prevent charges from being filed in the first place.  When a "fine" is paid to a court, the court must report the conviction and distribute the proceeds according to law.  When money is paid directly to the City in order to keep from being charged for violating the Ordinance, that payment is in no sense a "fine" and it is not subject to such oversight and reporting.[15]

The Ordinance violates two of the law's most basic principles.  First, the "power to inflict the penalty imposed by the ordinance cannot be exercised until there has been a *judicial determination* of the fact that the ordinance has been violated."  9A McQuillin Mun. Corp. § 27:81 (3d ed.) (emphasis added).  Second, before there can be such a "judicial determination," due process requires that the City must "prove the defendant's guilt beyond a reasonable doubt."  *City of Kansas City v. Oxley*, 579 S.W.2d 113, 114 (Mo. banc 1979) (footnote omitted).  One purpose served by these two principles is to prevent a municipality from threatening prosecution as a means of forcing a person to pay the City with no due process and no proof of guilt.

As noted above, Rule 37.33 plays a key role in enforcing these principles by controlling the content of all violation notices.  And, under Rule 37.34, each notice is

---

[15]   For example, the so-called Macks Creek Law prohibits a local government from receiving more than 35 percent of its annual general operating revenue from fines and court costs for traffic violations.  § 302.341.2 (this cap was lowered to 30 percent in 2013). But the Macks Creek law does not apply to amounts paid directly to the City *in lieu of fines* by owners looking to avoid being charged with such a violation in the first place.  By the same token, even though the Court holds here that a conviction for violating the City's Ordinance will result in the assessment of two points against the owner's driver's license, the process created in the Ordinance allows owners to escape such convictions by paying the City to keep charges from ever being filed.  Points are assessed only when a court reports a "plea or finding of guilty of any person … for any moving traffic violation under the laws of this state or county or municipal ordinances[.]"  If an owner pays money to the City *to keep from being charged with such a violation*, there will be no plea or finding of guilt for a court to report and, therefore, no record on which points can be assessed.

21

merely the beginning of a *judicial* process that ends either with a conviction and payment of a fine after a guilty plea or finding of guilt, or it ends with an acquittal or dismissal. The important thing, however, is that the process is under the control of a *court*, and any fines are paid into that court and distributed according to law. Due process is meaningless if the defendant is not in court where such rights can be asserted and protected. Rules 37.33 and 37.34, therefore, not only ensure the defendant notice and an opportunity to be heard, they ensure the defendant notice and an opportunity to be heard in court.

But this procedure can be unduly cumbersome given the large volume of notices issued and the relatively few defendants who plead not guilty. As a result, Rule 37.49 creates an alternative process to avoid the necessity of making every defendant come to court merely to plead guilty and pay a fine. This alternative is called a "violation bureau." Under Rule 37.49 and Rule 38, a judge – including a municipal judge[16] acting under the supervision of the circuit court, has the option of making certain ordinances (including most traffic ordinances) subject to this violation bureau process. Rule 37.49(c). To do this, the judge identifies the ordinances and publishes a schedule of fines for violations of these ordinances. Rule 37.49(d). The judge must also designate a clerk to conduct the duties associated with the violation bureau, Rule 37.49(b). Specifically, the judge authorizes the appointed clerk to accept entries of appearance, pleas of guilty, and payments of fines according to the established schedule. *Id*. *See also* Rule 37.49(e)

---

[16] Effective January 2, 1979, municipal courts became divisions of circuit courts. *See* Mo. Const. art. V, § 27(d). For ease of reference in this opinion, however, municipal divisions are referred to as municipal courts and judges in these divisions are referred to as municipal judges.

22

(delivery of the specified fine to the clerk of the violation bureau constitutes a guilty plea and waiver of trial). As above, however, the important thing is that every violation bureau is created and controlled by a *court,* ensuring that the individual's rights as a defendant are protected, and all fines must be paid to, held in, and distributed by that court.

The benefit of the violation bureau process in Rule 37.49 is to give those defendants who are willing to confess liability a quick and convenient method to waive trial, plead guilty, and pay their fine. The risk, however, is that a violation notice for an offense that is subject to a violation bureau might mislead the recipient into thinking guilt is presumed and may not be challenged. To avoid this danger, notices that are subject to the violation bureau process (in addition to complying with the requirements of Rule 37.33(a)) also must specifically state that the defendant may "respond to the violation notice by: (A) Paying the specified fine and court costs; or (B) Pleading not guilty and appearing at trial." Rule 37.33(b)(2).

Here, the fact that the City's Notice demands the payment of money not only violates Rule 37.33(a), it is anathema to the entire process described above. Under Rule 37.33(a), it is improper for any notice to demand the payment of money. The *only* exception to this is for notices that are subject to a violation bureau.[17] The approach

---

[17]  In essence, the City's Ordinance attempts to create a procedure with the "look and feel" of a violation bureau but with none of its protections. The attempt must fail, however, because: (1) a local legislative body has no authority to create a pseudo violation bureau under Rule 37.49 or any other rule or state law; (2) the Notice implementing the Ordinance does not contain the special warning set out in Rule 37.33(b); (3) there is no court oversight of the owner's payments, which are made directly to the City; (4) payments made directly to the City are not part of the revenues capped by the Macks Creek Law because they are not "fines;" and (5) points cannot be

23

enacted in the Ordinance and implemented by the Notice ignores the process described above and seeks to replace it with one in which money is paid directly to the City (or its contractor) with no judicial oversight, supervision, or control. In other words, a violation bureau is a shortcut *through* the judicial system but the unauthorized system created by the Ordinance and implemented by the Notice is a shortcut *around* the judicial system and its protection for the rights of the accused.

Language throughout the Ordinance confirms that this is the purpose. The Ordinance provides: "The Notice shall direct the Owner to respond within the time prescribed in the Notice either by paying the fine specified" or submitting an affidavit that one of the justifications is applicable. Ordinance, at § D4. "Any person who shall fail to respond to a Notice … by timely payment of fine … shall be sent a Notice of Hearing with a court date." Ordinance, at § G1. The City's Notice implements these provisions of the Ordinance, stating:

> Full payment before the due date of this Notice *will prevent this matter from being referred to the prosecutor for filing of an information in the Moline Acres Municipal Court*. [Emphasis added.]

The payment instructions in the Notice also play an essential role in implementing the Ordinance's unauthorized procedure. For example, the Notice instructs the owners to make the demanded amount payable, not to any court, but directly to the City or its "Automated Traffic Enforcement Center." These instructions expressly refer to this payment as the only way to "*resolve this matter outside the municipal court system*." [Emphasis added.]

---

assessed when the owner pays the City to keep from being charged because there is no conviction to send to the Department of Revenue.

24

With the Ordinance's purpose so clearly stated, the defects in the Notice identified by Brennan are not mere accidents or oversights. Instead, they are instrumental in achieving that purpose. Brennan complains that the Notice fails to state the name, address and telephone number of the court in which the ordinance violation is being prosecuted, but this information cannot be given because the purpose of the Ordinance (and Notice) is to demand payment in exchange for not charging the defendant in court. Owners may be more likely to make payments directly to the City (or its contractor) outside of court control and supervision if the Notice suggests that guilt is predetermined and does not have to be proved.

By the same token, Brennan complains that the Notice fails to give vehicle owners the date and time of their initial court appearances as required by Rule 37.33(c) and Form 37.A. But the Notice cannot do so. There is no prosecution (and, therefore, no hearings) unless and until the owner refuses to pay the City not to bring charges. The critical message being communicated throughout the Notice is that the owner is only being threatened with a charge of violating the Ordinance and – if he or she will pay the City the amount demanded – the City can ensure that there will be no such prosecution and no conviction.

Finally, the Notice makes no mention of the right to plead not guilty and no mention of the right to trial. Instead, the Notice states (twice) that the owners will have to pay *more* if charges are filed in court.[18] This threat emphasizes the central message to

---

[18] In case the threat of being charged is not enough to coerce the owner to pay, the Notice states: "Upon filing of an information, a summons for you to appear in the Moline Acres Municipal Court will be issued and court costs will be assessed and become payable in addition

the owner that an immediate payment directly to the City (or its contractor) is the only way to "resolve this matter outside the municipal court system." There is a word for threatening someone with legal claims or charges if they do not make a large and prompt payment, but that word is not "notice." And there is a word for money paid to keep claims of wrongdoing from being made public, but that word is not "fine."

There simply is no legal justification or authority for the Ordinance and its process of demanding payments from vehicle owners in exchange for not bringing charges against them. By implementing this extra-judicial process, the Notice runs so far afoul of the requirements of Rule 37.33 that it cannot serve as "support" for the information under Rule 37.34. As a result, both the Ordinance and the Notice are invalid.

In this case, of course, Brennan (unlike the vast majority of owners who receive such a notice) was represented by counsel. As a result, he was able to thwart the Ordinance's extra-judicial process, demand that charges be filed in court, and move his case to a court of record by demanding a jury trial on those charges. As explained above, this Court holds that the information charging Brennan is invalid under Rule 37.34 because it is not supported by a notice that conforms to the requirements of Rule 37.33(a), and because it is not supported by a notice substantially in the form of Form 37.A as required by Rule 37.33(c). Accordingly, the trial court's dismissal of that information with prejudice must be affirmed.

---

to the amount of this fine." This statement is not true. Court costs become payable only upon conviction; not the mere issuance of a summons. By including this falsehood, however, the Notice bolsters its implicit message that guilt is established and cannot be questioned.

26

**Conclusion**

For the reasons stated above, this Court affirms the judgment of the circuit court dismissing the City's information against Brennan with prejudice.

_____
Paul C. Wilson, Judge

Stith and Russell, JJ., and Prokes, Sp.J., concur; Draper, J., concurs in separate opinion filed; Stith and Teitelman, JJ., concur in opinion of Draper, J.; Breckenridge, C.J., dissents in separate opinion filed. Fischer, J., not participating.



# SUPREME COURT OF MISSOURI
## en banc

CITY OF MOLINE ACRES,          )
                                        )

          Appellant,       )

                                         )

v.                                   )     No. SC94085

                                       )

CHARLES W. BRENNAN,        )

                                       )

          Respondent.     )

## CONCURRING OPINION

I concur with the principal opinion's holding invalidating Ordinance 1084 and affirming the circuit court's judgment dismissing the City of Moline Acre's (hereinafter, "City") prosecution of Charles W. Brennan (hereinafter, "Brennan"). I write separately, however, to state that I firmly believe City's purported public safety ordinance imposing liability on an owner for a moving violation he or she did not commit and giving the owner no chance to demonstrate he or she did not grant permission to the operator to speed is nothing more than a blatant money grab by City. I would invalidate ordinance 1084 on this ground as well.

"[W]hen confronting matters of public safety, courts should skeptically scrutinize manufactured legal fictions that may obscure the actual danger confronted." *Ballard v. City of Creve Coeur*, 419 S.W.3d 109, 125 (Mo. App. E.D. 2013) (Mooney, J., dissenting). A municipality's traffic ordinance "may not be a tax ordinance in the guise

of an ordinance enacted under the police power." *Automobile Club of Mo. v. City of St. Louis*, 334 S.W.2d 355, 363 (Mo. 1960). "It is for the court to determine, on all pertinent facts, whether the primary and fundamental purpose of the ordinance is regulation under the police power or revenue under the tax power." *Id*. "The amount and purpose of revenue brought in by the ordinance are, of course, important factors in determining whether the ordinance is primarily a regulating one or a revenue one." *Id*. The court may also "look to and consider other relevant facts that bear on the question of the basic nature of the ordinance." *Id*.

Several recent court of appeals opinions addressing the validity of red light camera enforcement programs have held the challengers made sufficient factual allegations to overcome motions to dismiss regarding whether the ordinances were enacted pursuant to the municipalities' police power or as a plan to generate revenue. *See Unverferth v. City of Florissant*, 419 S.W.3d 76, 96 (Mo. App. E.D. 2013) (holding challenger was entitled to conduct discovery and establish a factual basis for her allegation that primary and fundamental purpose of ordinance was revenue generation); *Ballard*, 419 S.W.3d at 121 (holding issue of whether ordinance was enacted as a proper exercise of police power as opposed to an unlawful revenue-generating tax measure is a fact question that is inappropriate for resolution on a dismissal motion); *Edwards v. City of Ellisville*, 426 S.W.3d 644, 661 (Mo. App. E.D. 2013) (finding error in dismissal of a claim alleging an ordinance was a revenue-generating scheme, but ultimately holding the ordinance was void, rendering the revenue-generating claim moot); and *Damon v. City of Kansas City*, 419 S.W.3d 162, 185 (Mo. App. W.D. 2013) (holding factual allegations that city

2

officials "admitted that the purpose behind the camera program is to 'make money' and that 'most of the income from the fines are [sic] going to the vendor, [ATS]'" sufficient to overcome a motion to dismiss).

I find the discussion in *Brunner v. City of Arnold*, 427 S.W.3d 201 (Mo. App. E.D. 2013), informative on this issue. In *Brunner*, the court of appeals set forth in great detail the challengers' allegations that questioned whether the city's overriding purpose for enacting a red light camera ordinance was for revenue generation. *Brunner*, 427 S.W.3d at 226. The challengers pondered how public safety is promoted by an ordinance that does not assess points for a serious traffic violation, thereby authorizing unsafe drivers to remain on the road to run several more red lights thus, endangering others. *Id*. The challengers questioned how the creation of a rebuttable presumption aimed at punishing the owner, as opposed to the operator who committed the offense, promoted public safety when the rebuttable presumption permits the actual culprit to remain behind the wheel, again left to endanger others. *Id*. The challengers wondered how public safety is protected when an ordinance does not photograph the driver, thereby not assisting the municipality in prosecuting the actual culprit. *Id*. The challengers inquired about the fact that the ordinance generated "significantly more revenue than necessary" to offset the costs of enforcing the ordinance as demonstrated by the vendor administering the program receiving approximately one-third of the fine collected. *Id*. at 227. Finally, the challengers asked why a municipality would enact an ordinance that permitted the prosecution of innocent individuals while decreasing the municipal resources expended by the city and simultaneously increasing its revenue. *Id*. The *Brunner* court found the

3

answers to these allegations "would seem to favor generation of revenue as the primary purpose of the [o]rdinance." *Id.*

In this case, City's traffic enforcement program was enacted under the guise of promoting public safety, by purporting to enforce every motor vehicle owner's duty to ensure that his or her vehicle complies with the prescribed speed limits, without regard to whether the owner actually operated the vehicle at the time of the infraction. It is troubling that City's scheme subjects an innocent owner to liability for merely entrusting his or her vehicle to a family member, friend, acquaintance or coworker. Not only must this innocent owner pay the penalty imposed, but the owner must also be assessed points for a moving violation that he or she did not commit. Under this scheme, it is not out of the realm of possibility for a parent with two eager, teenaged drivers to amass assessed points rather quickly, thus jeopardizing the parent's ability to drive legally while the teenagers remain on the road as potential threats to public safety. If the true aim of City's ordinance is to promote public safety, the imposition of liability against the owner, rather than the operator, does little to attain that goal. Rather, it comes across as a mechanism for generating revenue for City.

This Court should be cognizant of the times in which these ordinances are being enforced in light of the recent criticisms of St. Louis County municipalities, which have used traffic violations and the revenue they generate to enrich their coffers to the financial detriment of the citizens they are ostensibly protecting.

_____<br>
GEORGE W. DRAPER III, JUDGE

4



# SUPREME COURT OF MISSOURI
## en banc

CITY OF MOLINE ACRES,           )
                                               )
           Appellant,          )
                                               )
v.                                     )     No.  SC94085
                                             )
CHARLES W. BRENNAN,       )
                                             )
           Respondent.       )

## DISSENTING OPINION

I agree with the majority's conclusion that the City of Moline Acres's ordinance does not conflict with state law by punishing drivers who permit their motor vehicles to be operated at a rate in excess of the speed limit and that the ordinance does not conflict with state law regarding the assessment of points because, while points are required for a violation of the ordinance, the ordinance is silent as to the assessment of points. I write separately, however, because I believe the majority's analysis of the rebuttable presumption and the notice defects goes beyond the grounds for dismissal Mr. Brennan raised to the circuit court.

Mr. Brennan's claim regarding the burden of proof presented to the circuit court and to this Court is that the ordinance shifts the burden of proof by requiring the defendant to prove another person was driving the motor vehicle. The majority finds Mr. Brennan's argument about this "owner-equals-driver" presumption fails but,

nonetheless, finds the ordinance unconstitutional for presuming from ownership permission to operate the vehicle at a rate in excess of the speed limit. The majority's basis for ruling on this issue is that, in its brief, the city took the position that the ordinance contained a rebuttable presumption. It should be noted that the city interpreted the ordinance as including a presumption equating ownership with permission to operate the motor vehicle, not necessarily with permission to operate the motor vehicle at a rate in excess of the speed limit. More importantly, the majority ignores the standard of review. The Court may affirm the trial court's ruling sustaining a motion to dismiss on any ground alleged in the motion, but it will consider only the grounds raised in the motion. *Travelers Prop. Cas. Co. of Am. v. Manitowoc Co.*, 389 S.W.3d 174, 176 (Mo. banc 2013); *Foster v. State*, 352 S.W.3d 357, 359 (Mo. banc 2011).

Regarding the defects in the notice, Mr. Brennan argued that the notice violated his right to due process in that it failed to state the date and time of his first court appearance and failed to set forth facts showing there was probable cause to believe Mr. Brennan violated the ordinance. While the majority finds the fact that Mr. Brennan appeared and defended against the charges irrelevant, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Jamison v. State, Dep't. of Soc. Servs., Div. of Family Servs.*, 218 S.W.3d 399, 405 (Mo. banc 2007) (internal quotations omitted). To have a meaningful opportunity to be heard, a person must be provided with "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of [an] action." *State v. Elliot*, 225 S.W.3d 423, 424 (Mo. banc 2007).

2

After receiving the notice of violation, even without a hearing date, Mr. Brennan's counsel entered his appearance and requested the case be certified for a jury trial. Mr. Brennan then moved to dismiss the prosecution on various grounds and was afforded a hearing. He has had an opportunity to challenge the notice of violation and the ordinance and has utilized that opportunity. Mr. Brennan cannot show prejudice for a lack of notice or an opportunity to be heard when he, in fact, had such an opportunity and suffered no injury from the alleged deficiencies in the notice. *See State ex rel. Police Ret. Sys. of City of St. Louis v. Murphy*, 224 S.W.2d 68, 71 (Mo. banc 1949). The majority finds irrelevant Mr. Brennan being afforded notice and an opportunity to be heard because the notice acts as the charging document and, therefore, any deficiency in the notice also relates to the charging document. Even if the notice was defective as a charging document such that dismissal is warranted, however, dismissal for an insufficient charging document is one without prejudice. *State v. S.E.*, 675 S.W.2d 86, 87 (Mo. App. 1984). Therefore, the Court should not affirm the dismissal as one with prejudice on the basis of the deficiencies of the notice.

In addition to finding the notice defective as a charging document, the majority finds the ordinance is invalid because the defects in the notice are part of "the fundamentally unauthorized nature of the extra-judicial process enacted by the Ordinance." The majority finds the ordinance is invalid because it sets up a structure in which the city asks for payment of a fine without utilizing the courts or a violations bureau. While the majority raises some valid concerns, Mr. Brennan did not argue to the circuit court, or even to this Court, that the ordinance was invalid as an unauthorized

3

demand for payment. This Court's practice is to exercise judicial restraint in determining the constitutional validity of a statute by only reaching the question when necessary. *In re Estate of Austin*, 389 S.W.3d 168, 170 n.9 (Mo. banc 2013). The same should be true of ordinances, which, like statutes, are presumed constitutional. *Saint Louis Univ. v. Masonic Temple Ass'n of St. Louis*, 220 S.W.3d 721, 725 (Mo. banc 2007). Accordingly, whether the ordinance is invalid as a demand for payment outside the judicial system should not be decided by this Court because it is not an issue that Mr. Brennan raised as a ground for dismissal. *See Travelers Prop.*, 389 S.W.3d at 176; *Foster*, 352 S.W.3d at 359.

_____
PATRICIA BRECKENRIDGE, CHIEF JUSTICE

4