

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI, )
              )
     Plaintiff-Respondent, )
              )
vs. )     No. SD33635
              )
NOAH JORDAN MOORE, )     **Filed: September 11, 2015**
              )
     Defendant-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Thomas E. Mountjoy, Circuit Judge

## AFFIRMED

In this court-tried case, the trial court found Noah Jordan Moore ("Defendant") guilty of burglary in the first degree, assault in the second degree, and armed criminal action. In a single point relied on, Defendant claims:

> [t]he trial court erred in denying [Defendant's post-verdict] motion to reopen evidence for the purpose of inserting an inference that the location of [Defendant's] cellular phone was at a location other than the scene of the crime because [Defendant] was deprived of his right to counsel . . . during the investigation of his alibi defense during the time when his cellular location data was available and such an inference would neutralize the taint of such deprivation.

First, we must determine what ruling Defendant is challenging. It appears that the ruling being challenged is the decision by the trial court not to "reopen" the evidence.

1

Unfortunately, Defendant does not show this Court, nor did he show the trial court, what "evidence" should have been admitted. For that reason, we reject Defendant's claim.

**Facts and Procedural History**

Defendant was charged on February 4, 2010, with (1) burglary in the first degree, (2) assault in the second degree and (3) armed criminal action based on events that occurred on November 29, 2009, when Steven Hamilton ("Victim") was assaulted with a bat by multiple individuals inside Victim's apartment in Greene County. On February 8, 2013, Defendant waived his right to a trial by a jury.

The evidence at trial included the following: In the evening on November 28, 2009, Victim and a friend named Tim Koff went to a bar in Springfield. Victim knew Defendant, in 2009, through a mutual friend; Defendant had dropped Victim off at Victim's home once and Victim had been to Defendant's home once. Victim saw Defendant in the bar. There were four men with Defendant. Koff "got into an altercation" with Defendant, and Koff was "kicked out" of the bar. Victim then "got into an altercation" with Defendant, and "hit" Defendant "somewhere around below the eye" because of "the altercation that happened between [Koff] and [Defendant]."

Victim then was "escorted out" of the bar. Koff, Victim, and a female friend of Victim's then went to another bar where they stayed until 1:00 a.m. or a little after the next morning. At that time, Koff was "escorted out" of the bar because he "didn't want to take his hat off." Victim was told he also needed to leave the bar, and was "escorted . . . out." In escorting Victim out of the bar, the "bouncers" "kind of put their arm around [his] neck" and left a "small scratch." The bouncers also "maced" Victim. Victim spoke

2

to a police officer who arrived at the bar. Over a period of about four hours, Victim had "maybe eight to nine beers."

From the second bar, Victim went straight home to his apartment "on the south side of Springfield" in Greene County. Victim's fiancée was present at the apartment. Victim's fiancée asked her parents to come over to the apartment because she was concerned that Victim had been maced. The fiancée's "parents left when they seen everything was all right."

After the parents left, there was a knock on the apartment door. Victim "look[ed] out the door" and observed a single individual facing the door wearing what "looked like a Carhart coat." The door then "flew open," and someone punched Victim in the mouth with their fist. Victim attempted to close the door, but there was a bat wedged between the door and the door frame, and "people [were] pushing on the other side."

After a short time, the door was forced open, and two individuals came inside the apartment and two individuals remained outside the apartment standing by the door. Defendant was one of the individuals that came inside the apartment and was carrying a bat. Defendant was wearing a hoodie with the hood "pulled up over his head." Victim could see Defendant's face and recognized him based on having seen him multiple times before. Defendant told Victim "[y]ou thought you were going to get away with it," and "[c]ontinuously hit" Victim with the bat "[i]n the head, . . . leg, arms, shoulders." Victim's fiancée stayed in the bedroom and called 911. Defendant and the other three individuals left.

Defendant had arrived at the apartment "[p]robably around 1:30, 1:45." The police responded to the call, came to Victim's apartment, and Victim "was taken to the

3

hospital." At the hospital, Victim told a police officer "the man that hit [him] with the bat was Noah." Victim also told a detective the same thing "a couple weeks" later, and "pick[ed]" "Noah" out of a photo lineup.

Defendant called four friends who were related to and lived with one another as his alibi witnesses to testify that he could not have been at Victim's apartment at the time of the assault because he was in a different location.

On June 17, 2013, the trial court found Defendant guilty of each of the charged crimes. In announcing the verdicts, the trial court stated:

> I did thoroughly consider all of the evidence presented. This case really came down to credibility issues. And I can't say that the victim who testified in the case, that his credibility was sterling in any respect, but consistent with the facts that were presented.
> I would also just comment that the alibi witnesses who were presented by the Defense were a mixture in terms of credibility. There were some of them, the parents particularly, whose credibility, I think, was very high. But at the same time, it was very clear from their testimony, taken as a whole, they were talking about a different day than that in which the offense was alleged to have occurred.

Defendant filed a motion to reopen the evidence on August 16, 2013, which was ultimately denied. At the hearing on the motion to reopen the evidence, defense counsel stated:

> During the entirety of the time that I have represented Noah, we have proceeded toward trial and ultimately had a trial, with the plan to assert an alibi defense.
>
> . . . .
>
> In the course of my investigation, I came to believe that Noah's cell phone, the location of his cell phone, may have -- may demonstrate that he was not at the scene of the alleged crime.
> Unfortunately, in the course of my investigation, I learned that the cell phone company destroys the location data one year after it's collected, and so at no point during the time that I represented Noah did I have any chance to get that information.

4

Then after the trial, we had in our country the Snowden leaks, where it came out that perhaps the government may have some information about cell phone metadata and other data. So I filed my -- I filed Defendant's motion to reopen the evidence, and the Court afforded us some time to investigate that a little bit further.

Your Honor, attached to my request for continuance I filed today are the requests, pursuant to the Freedom Of Information Act, that we requested of the National Security Agency, the Federal Bureau of Investigation, the Department of Justice, about six different government agencies all together, that may or may not have cell phone location data.

The responses that we got back were either we don't have the data or, pursuant to a National Security exception, we're not going to tell you whether or not we have the data. And in the course of investigating with the U.S. government, I was not able to obtain any cell phone location data for Noah at the time of the alleged crime.

Also in the course of my investigation, I was able to interview a representative from Verizon Wireless, their litigation compliance unit, and he represented to me over the phone that his cellular location data would have been collected, and it would have been destroyed within one year of the alleged crime.

What I have done is I have requested of Verizon Wireless a document that says that, that I can insert into the record in this case to preserve that record and to preserve that issue, and I have made three separate requests. Apparently, there was a miscommunication between myself and Verizon as to the fax number, and the latest request I made was yesterday. Obviously, I don't have that response back from Verizon, but I'm told by Verizon that it will be made available. The purpose of my request for a continuance, Your Honor, is to be able to have that document from Verizon Wireless, to be able to put that into the record.

An alternative to a continuance, of course, would be if the Court would leave that issue open, and perhaps we could supplement the evidence with that last document.

Later in the hearing, for the first time, defense counsel argued that:

One possible way that I could see to fix this, the Defendant filed a motion to reopen evidence, and where the evidence has been destroyed, one thing that I would suggest would correct this problem is if we reopened the evidence to the extent that the Court injected an inference that Noah Moore's cell phone was at a location other than the scene of the alleged crime, and, based upon that additional inference, rule as to guilt or innocence.

Defense counsel also acknowledged "that, barring the National Security Agency deciding

they want to give up all of their location data, I don't think that [Noah's cell phone]

5

location data will ever be available to Noah." The State stipulated that Verizon "would have likely gotten rid of [Noah's cell phone location data]" "after a year."

**Analysis**

As noted in his point relied on, Defendant claims:

[t]he trial court erred in denying [Defendant's post-verdict] motion to reopen evidence for the purpose of inserting an inference that the location of [Defendant's] cellular phone was at a location other than the scene of the crime because [Defendant] was deprived of his right to counsel . . . during the investigation of his alibi defense during the time when his cellular location data was available and such an inference would neutralize the taint of such deprivation.

Initially, we note Defendant does not refer us to any authority that permits the use of a motion to reopen the evidence in the circumstances of this case (i.e., post-verdict in a criminal case); however, generally, a decision to reopen the evidence is left to the broad discretion of the trial court. *Beal v. State*, 209 S.W.3d 542, 545, 546 (Mo.App. S.D. 2006). The trial court's action will be reversed only if the trial court abused its discretion. *State v. Gagallarritti*, 377 S.W.2d 298, 302 (Mo. 1964).

There is no evidence in the record, or even assertion, that Defendant had his cell phone with him at the time of the charged offenses. As a result, evidence of the location of Defendant's cell phone at the time of the charged offenses is not logically or legally relevant to his alibi defense. Further, Defendant is not requesting that the evidence be reopened to admit evidence of the location of Defendant's cell phone at the time of the charged offenses. Indeed, defense counsel acknowledged at the post-verdict hearing on December 20, 2013, that evidence of the location of Defendant's cell phone at the time of the charged offenses likely is now unavailable. Instead, Defendant seeks to "insert[] an inference" from unknown and unavailable data that Defendant's cell phone "was at a

6

location other than the scene of the crime" in order to "neutralize the taint" of initial defense counsel's alleged ineffectiveness. An inference must be based upon evidence. "[I]n criminal cases, there must be a 'rational basis' for the presumption such that the presumed fact is 'more likely than not to flow from' the proved fact." *City of Moline Acres v. Brennan*, No. SC94085, 2015 WL 4930167, at \*7 (Mo. banc August 18, 2015) (quoting *County Court of Ulster County, N.Y. v. Allen*, 442 U.S. 140, 142, (1979)).[1] There is simply no evidence to be introduced that supports an inference that the cell phone was not at the scene of the crime (just as there is no evidence to support an inference that the cell phone was at the scene of the crime). Assuming, without deciding, that the trial court had the authority to consider reopening the evidence as requested, it did not abuse its discretion in declining to do so "for the purpose of inserting an inference that the location of [Defendant's] cellular phone was at a location other than the scene of the crime[.]" Defendant's point is denied.

The trial court's judgment is affirmed.

Nancy Steffen Rahmeyer, J. - Opinion Author

Don E. Burrell, P.J. - Concurs

William W. Francis, Jr., J. - Concurs

---

[1] In *City of Moline Acres v. Brennan*, the court was analyzing a presumption; however, it noted that "a permissive or rebuttable presumption is merely an inference that the legislative body tells the fact finder it may (but does not have to) draw." *Id.* at \*7.